In re PODOLIN et al.

(District Court, E. D. Pennsylvania. March 1, 1913.)

BANKRUPTCY (§ 28*)—SCHEDULES—DUTY TO FILE—INCRIMINATING STATEMENTS.

Bankrupts, though under indictment for misuse of the mails, could not lawfully refuse to file any schedules of assets and liabilities on the ground that to do so would tend to incriminate them, but were bound to file a schedule which complied with the act up to the point where the court could see that further obedience would violate their constitutional privilege.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 27; Dec. Dig. § 28.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Israel Podolin and others individually and trading as the Franklin Suit & Skirt Company. On certificate of referee to review a ruling requiring the bankrupts to file schedules. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the certificate of Richard S. Hunter, referee:

Sur Application for Order on Bankrupts to File Schedules.

The bankrupts have been indicted for using the mail with intent to defraud, and their trial is set for September. They now, under advice of counsel, refuse to file their schedules in bankruptcy on the ground that their schedules might tend to incriminate them.

The petitioning creditor asks the referee to order the bankrupts to file their schedules.

The Constitution of the United States provides in the fifth amendment that no person "shall be compelled in any criminal case to be a witness against himself." This clause means, not only that a person shall not be compelled to be a witness against himself in a criminal proceeding, but its object is to insure that a person shall not be compelled, when acting as a witness in any investigation to give testimony that may tend to show that he himself has committed a crime. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. The provision in the Bankruptcy Act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), requiring the bankrupt to testify before the referee, but providing that no testimony then given by him shall be offered in evidence against him in any criminal proceeding, does not amount to an exemption from prosecution. Burrell v. Montana, 194 U. S. 572, 24 Sup. Ct. 787, 48 L. Ed. 1122.

It has been repeatedly held, and has now been settled by the Supreme Court, that books of account which the bankrupt claims contain matter which might tend to incriminate him must, nevertheless, be delivered to his trustee. In the matter of Harris, 26 Am. Bankr. Rep. 302, 221 U. S. 274, 31 Sup. Ct. 557, 55 L. Ed. 732. "The question," says Mr. Justice Holmes, "is not of testimony, but of surrender, not of compelling a bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep. * * * That is one of the misfortunes of bankruptcy if it follows crime. The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story."

It is clear, then, that a bankrupt cannot be compelled to testify against himself in a criminal proceeding; and it is also clear he cannot withhold from his trustee books and papers already in existence upon the ground that they may incriminate him. Is he compellable to file schedules which may incriminate him? Under the seventh section of the act of 1898, "the bankrupt shall prepare, make oath to and file in court within ten days after the adjudication a schedule of his property, setting forth in full its amount, location and value, and a list of his creditors." No direct penalty is affixed by the act to the failure on the bankrupt's part to file his schedules. Unless he loyally assists his trustee in all proper ways, he cannot obtain his discharge. In case the bankrupt is absent or cannot be found, the petitioning creditor, under general order 9 (18 Sup. Ct. v), must file a schedule, giving the names and places of residence of the creditors. Under section 39 it is the duty of the referee to prepare and file the schedules of property and list of creditors required to be filed by the bankrupt, or cause the same to be done when the bankrupt fails, refuses, or neglects to do so.

It is obvious from these clauses and orders that the law contemplated that in many cases the bankrupt would not or could not file his schedules. It is, of course, his duty to do so, and for a wanton refusal so to do he is liable, in the discretion of the court, to the proper penalty for contempt.

In the present case the bankrupts are actually under indictment, and in the proceedings against them as alleged bankrupts the present referee has decided that they have committed perjury of the grossest kind. No doubt the filing of schedules in the usual form might incriminate them in many ways. These schedules, if filed, are considered as voluntarily offered. Commonwealth v. Ensign, 40 Pa. Super. Ct. 157, 22 Am. Bankr. Rep. 797. Judge Rice in this case calls special attention to the fact that the Bankruptcy Act attaches no penalty to the bankrupt's failure to file schedules, and that it did

not appear at the time they filed them that they were under arrest or had been charged with a criminal offense.

The referee concludes that the bankrupts need not file schedules which will incriminate them. Are they, therefore, exempt from the duty of filing any schedules? It is evident that very many of the particulars which are embraced in the schedules can be given by them without self-incrimination. They should furnish a list of creditors, a list of property, and a list of books held by the firm, and in general they should file schedules under the form required by the act, and give all information they can to their trustee up to the point at which it incriminates them. Schedules so prepared may be meager and unsatisfactory, but the bankrupts will then have done what is required by the act up to the point where they can plead their constitutional privilege.

The referee orders that the bankrupts shall file their schedules in bankruptcy. Whenever particular information required under these schedules is such as may incriminate them, they must refuse to furnish it upon the specific ground that it so incriminates them.

J. Howard Reber, of Philadelphia, Pa., for petitioning creditors.
Clinton O. Mayer, of Philadelphia, Pa., for bankrupts.

J. B. McPHERSON, Circuit Judge (specially presiding). As a general proposition, the referee's ruling that the bankrupts must file schedules, so far as they can do so without incriminating themselves, is obviously correct. But, until an effort is made to comply with his order, it is practically impossible for the court to decide whether a particular fact is to be included or omitted. To decide that a bankrupt is not bound to put his hand to a declaration of fact that may incriminate him, does not advance a particular dispute very much. What is required is an effort in good faith by the bankrupt to file a schedule that obeys the act up to the point where the court can see that further obedience would violate the constitutional protection. When the bankrupts present such schedules as they can conscientiously declare to be a compliance with the order (saving their constitutional rights), the referee will then be able either to order them to do specific acts or to approve the refusal to do them; and in either event the District Court will then have something definite to rule upon. Until such a situation is presented, the discussion is almost wholly academic.

The order of the referee under date of July 18, 1912, is affirmed; and it is now ordered that the bankrupts file their schedules as directed by the referee on or before March 20, 1913.