**In re FREE.**

No. 20160.

District Court, D. Connecticut.

April 9, 1941.

Lee B. Brooks and Sigmund L. Miller, both of Bridgeport, Conn., for the Bankrupt.

F. C. Hesselmeyer (of Chambers, Hesselmeyer & Grimes), of New Haven, Conn., and David R. Lessler, of Bridgeport, Conn., for Personal Finance Co.

HINCKS, District Judge.

This review raises the question whether the Referee erred in failing under the circumstances here disclosed to require the bankrupt to supplement his schedules, which showed the names and addresses of his creditors, with data showing when and where the several claims of creditors were incurred.

■ The data sought was required by Official Form No. 1. The bankrupt argues that the requirement of this form was directory only. Granted that that be so, it does not follow that the requirement, imposed as it has been by the Supreme Court, may be disregarded at will. It means at most that non-compliance will not defeat the jurisdiction of the Bankruptcy Court and that the defect is amendable. Thus the cases cited holding that such a direction is directory only, constitute no authority for the Referee to disregard the mandate of the Supreme Court when the fact of non-compliance has been specifically, and seasonably, brought to his attention, as here. On the contrary, the official requirement under the express mandate of Section 39, sub. a(3), Bankr.Act, 11 U.S.C.A. § 67, sub. a(3), is entitled to the supporting weight of the official action of the Referee. See article "Requiring Complete Schedules", Journal Nat. Assn. of Referees in Bankruptcy, Vol. 14, No. 3 (April 1940) Page 94.

To be sure, for purposes of the Schedules the time and place of a debt may have less importance than the name and residence of the creditor. Cf. Collier's 14th Ed., Vol. 1, Page 980, et seq. Nevertheless, this detail is at least of equal importance with much of the data required in the statement of affairs, Official Forms 2 and 3, and reaches toward the same objectives. Collier's 14th Ed., Vol. 1, Page 995, Note 2. Doubtless, the Supreme Court would have required the inclusion of this data in the statement of affairs if it had not already provided for its inclusion in the schedules.

■ Nor is it a sufficient excuse for non-compliance to assert, even though it be true, that the bankrupt lacks knowledge of the detail required for compliance. The Act contemplates thorough-going, orderly administration. This is impossible in the case of a bankrupt whose affairs are in a state of vague chaos, until painstaking care is taken by some one to bring order out of the existing chaos. Clearly the Act contemplates that the primary burden of this process shall be borne by the bankrupt. And it is the duty of the Referee under Section 39, sub. a(3), to hold the bankrupt to the discharge of this burden, rather than to saddle creditors with the labor and expense involved.

■ If the bankrupt has kept no record of the time and place of his debts, it is his duty to ascertain these facts by inquiry of his respective creditors. If for some unusual reason, such efforts are unavailing, the resulting absence of the required data on the schedules should be suitably explained. Cf. Collier's 14th Ed., Vol. 1, Page 980, et seq. Definitely the Act does not view the official machinery of bankruptcy administration as a slot machine which upon the insertion of a coin (or a poverty affidavit) will automatically produce a ready-made discharge for one—even though he be a wage-earner—who has suffered his personal affairs to fall into confusion and fails to give the cooperation necessary to present a thorough and orderly account thereof.

It is not for this court to discuss whether the official form, in the aspect here involved, serves a useful purpose or, as the referee apparently thought, imposes a useless burden on the bankrupt. The Supreme Court has settled that question by the promulgation of the official form. But without impertinence I may observe that the official form ties in perfectly with the underlying reasons for requiring a statement of affairs which Congress apparently thought of sufficient importance to insert in the Chandler Act (Sec. 7, sub. a(9), 11 U.S.C.A. § 25, sub. a(9). See Collier's 14th Ed., Vol. 1, page 994. Apparently it lay in the mind of Congress that fraudulent discharges would be discouraged if greater detail were required of the bankrupt and thus greater opportunity afforded for his cross-examination at the first meeting, and that arrangements to this end would obviate the need for a hearing on the application for a discharge in all those cases in which no specification of objections were interposed after full compliance by the bankrupt in furnishing all the detail required under the amended Act and the General Orders, 11 U.S.C.A. following Section 53, pursuant thereto.

The transcript here fails to support the Referee's finding that it was "apparently

impossible" for the bankrupt to furnish the required data. To be sure, many of the claims against him had been incurred by his wife (who left him before petition filed) without his knowledge. But just as the bankrupt ascertained the existence of such claims by inquiry (e. g., the Howland claim, page 9), so for aught that appears he could have pushed his inquiry one step further and ascertained the date and place of the debt. If this information had not been acquired before petition filed, it could have been added to the schedules by amendment prior to the first meeting.

Nor does the record support the finding that the information which the bankrupt gave on the witness stand under examination at the first meeting satisfied the requirements. For even after sixteen pages of testimony, the dates of the several debts were not established.

█ When, at the first meeting, motion was made for an order of compliance, unquestionably it lay within the discretion of the Referee to decide whether to proceed forthwith with the examination or not. But if agreeable to the wishes of creditors in attendance, opportunity was afforded for the forthwith examination of the bankrupt, the first meeting should have been adjourned to permit of further examination without charge to examining creditors (Cf. Rule 100(f) after compliance by the bankrupt with the order which should have been entered by the Referee.

█ But ordinarily examination before compliance will tend to defeat one of the main purposes of the official form by expanding the record unduly (as is evidenced by the sixteen page transcript now before me), and such a course should not be encouraged in the absence of some special reason such as the attendance of creditors or counsel—especially those from a distance—who desire to begin the examination forthwith. And even in such a case, the examination should be undertaken forthwith only with the assurance that it will be continued, if desired by any creditor, after the bankrupt's compliance, so that creditors preferring to delay their participation may make their arrangements accordingly.

It is accordingly ordered that the bankrupt comply by amending his schedules to show all the data required by the official form and, to the extent that after reasonable effort he is unable to comply, show the reasons for such inability.

And it is further ordered that after such compliance opportunity be afforded creditors again to examine the bankrupt.