In the Matter of JOHN LAKIS, INCOR-
PORATED, Bankrupt.

United States District Court
S. D. New York.
May 6, 1964.

Samuel P. Adelman, New York City, for trustee.

Englander & Englander, New York City, for John Lakis; Herman Englander, New York City, of counsel.

WYATT, District Judge.

This is the decision after a hearing brought on by order of Honorable Herbert Loewenthal, Referee in Bankruptcy, requiring John Lakis to show cause why he should not be adjudged in contempt for failure to obey orders directing the bankrupt and said John Lakis to file schedules. 11 U.S.C. §§ 25, sub. a(8), 69, sub. b.

An involuntary petition in bankruptcy was filed on November 7, 1962 by three creditors against John Lakis, Incorporated, a New York corporation, said to have been engaged in making and selling fur garments. 11 U.S.C. § 95, sub. b. The act of bankruptcy alleged was concealment or removal of a number of mink skins with intent to hinder, etc. 11 U. S.C. § 21 sub. a(1).

On the day the involuntary petition was filed, an order was made by this Court requiring the alleged bankrupt to plead to the petition by November 14, 1962 and directing service on the bankrupt by publication. This order was made (without notice) on an affidavit by the attorney for the petitioning creditors that personal service could not be made on the alleged bankrupt within the district. 11 U.S.C. § 41, sub. a. The affidavit further recited that "petitioner has been informed that John Lakis who is apparently the sole stockholder and only officer of the alleged bankrupt corporation has left this country to return to Greece. This information was obtained by your petitioner from an attorney representing Mr. Lakis. In addition Mr. Lakis has written a letter in which he has indicated that he was abandoning the property of the bankrupt."

There was an adjudication of bankruptcy by default on November 23, 1962 and a reference of the proceeding to Referee Loewenthal. 11 U.S.C. § 41, sub. e.

On December 11, 1962 American Fur Merchants Adjustment Bureau, Inc. was declared the duly elected trustee. The attorney for the petitioning creditors became attorney for the trustee. This attorney stated at the first meeting of creditors that it "will be necessary to attempt to extradite" John Lakis.

No schedules were filed by the bankrupt and on November 13, 1963 Referee Loewenthal made a written order requiring the bankrupt to file schedules within ten days after service of the order on "John Lakis, the President of said bankrupt". 11 U.S.C. §§ 11, sub. a(15), 25, sub. a(8). This order was personally served on John Lakis on November 27, 1963 at "706 South Hill Street, 7th Floor, Los Angeles, California". The order plainly was not only within the authority of the Referee but the Referee was under a duty to make it. 11 U.S.C. § 67, sub. a(2); In re Free, 38 F.Supp. 316 (D. Conn.1941); 1 Collier on Bankruptcy (14th ed.) 981; 2 Remington on Bankruptcy (Henderson ed.) § 570.

No schedules were filed.

On January 20, 1964 John Lakis appeared before Referee Loewenthal as a witness and was duly sworn. 11 U.S.C. § 44, sub. a. The attorney for the trustee stated that the "matter has already been referred to the Federal Bureau of Investigation. We had tried to extradite him * * *". The attorney for John Lakis stated that he "has appeared here voluntarily".

The Referee orally directed Lakis at the examination to file schedules within ten days or by January 30, 1964. This was after the attorney for Lakis had said: "I don't think this witness is in a position to file any schedules * * *".

The witness refused to answer nearly all questions asked him on the ground

that his answers "might incriminate" him. No statement or explanation was ever made as to how this could be so, or as to what criminal proceedings (if any) were pending or threatened or feared.

No schedules were filed and on January 30, 1964 Lakis again appeared as a witness before the Referee. When asked why he had not filed schedules, he stated that "filing such a schedule will incriminate me".

The trustee then petitioned for a certificate to the judge under 11 U.S.C. § 69, sub. b. There was an answer by John Lakis to this petition, generally neither admitting nor denying its averments because of the assertion that to do so "would tend to degrade or incriminate him". The answer also contained a defense in substance that the "disclosures" required to be made in the schedules "would be capable of being used against him as a confession of crime, or an admission of facts tending to prove the commission of an offense by himself, in any prosecution already pending or that might be brought against him hereafter". Nothing any more specific was set forth. The Referee certified the facts and made the order to show cause which brought Lakis before this Court. The Referee's opinion was that the schedules had to be filed by Lakis (which is plainly correct) but that particular questions "which he deems incriminating" need not be answered (which is too broad to be correct).

■ Lakis first argues against any order punishing him for contempt on the ground that there is no "competent evidence" in the record that he "was an officer of the bankrupt corporation".

In the case of a corporation any officer, director, trustee, stockholder or member may be designated to "perform the duties imposed upon the bankrupt". 11 U.S.C. § 25, sub. b.

That John Lakis had an important and meaningful position with the bankrupt is evident from its name because, except that he had such a position, there would appear to be a violation of the New York Penal Law, § 964. Such a violation cannot be assumed. Annexed to one of the claims filed is an original check of the bankrupt; the manual signature purports to be that of John Lakis. Promissory notes appear to be signed for the bankrupt by "John Lakis Pres". Drafts accepted by the bankrupt purport to be signed by John Lakis as "agent or officer". The attorney for the petitioning creditors made affidavit that on information "apparently" John Lakis was "the sole stockholder and only officer" of the bankrupt. In the absence of any attempt to show by any means that John Lakis was not a stockholder or officer of the bankrupt, the evidence in the record is sufficient to support the order of the Referee.

This follows as well because the provisions of 11 U.S.C. § 25, sub. b have been given a wide scope; where the president of a corporation had resigned as such before adjudication of bankruptcy, it was held that the Referee could properly order him to file schedules because he was at least one of the "fiduciaries of a bankrupt corporation" and the statute should not be read to exclude "those fiduciaries, only lately retired, who have the most direct knowledge of the matters as to which information is required". Greene v. Harris, 240 F.2d 275 (2d Cir. 1957).

■ As to the arguments based on the Fifth Amendment ("nor shall be compelled in any criminal case to be a witness against himself"), the principle laid down in In re Arend, 286 F. 516 (2d Cir. 1922) should first be noticed. This principle is that a failure by a bankrupt to file schedules is not excused merely by the statement of the bankrupt that filing such schedules might incriminate him. Our Court of Appeals said (286 F. at 517):

"It was the duty of the bankrupt under section 7(8) of the Bankruptcy Law (Comp.St. § 9591) to prepare, make oath to, and file a schedule of his property, with certain details as in the statute set forth. In declining so to do the bankrupt, as

appears from his affidavit, made no statement other than that the schedules 'may tend to incriminate or degrade him.'

"So far as this record discloses, there was nothing else before the District Court and no facts nor circumstances of any kind whatever from which the court could determine whether the refusal was based on merely fanciful grounds or upon some imaginary fear or arbitrary reason or, on the other hand, upon some ground which fairly opened up the right of defendant to avail of his constitutional safeguard.

"The question is thus flatly presented as to whether or not a bankrupt who refuses to file his schedule as required by the statute may rest that refusal upon the naked assertion that the schedule may tend to incriminate or degrade him."

And the Court of Appeals answered in the negative the question "thus flatly presented".

In the case at bar there is nothing put forward to support the claim of privilege against self-incrimination. It is not suggested that any criminal proceedings against Lakis are pending. Compare In re Mutual Security Savings & Loan Ass'n, Inc., 214 F.Supp. 877 (D.Md.1963) where eight indictments had been returned but the Court nevertheless required the filing of schedules. See also Podolin v. Lesher Warner Dry Goods Co., 210 F. 97, 103–104 (3d Cir. 1914) where the court said:

"Where the bankrupt claims his constitutional privilege under the amendment, and refuses to give the information required by the Bankrupt Act, on the ground that it may incriminate him, it must at least appear to the court from the character of the information sought or the question propounded, that his claim is justified, or the bankrupt must produce facts on which he bases such claim, in order that the court may judge of their sufficiency to support it.

*   *   *   *   *   *

"Liberal as the scope given to the fifth amendment by the court is and ought to be, it was never intended that a bankrupt, dishonest or otherwise, should be clothed with the power to decide for himself when and under what circumstances he was authorized by the amendment to interrupt the bankruptcy procedure, by refusing to conform to the requirements of the law. In the present case, there is clearly no direct and apparent self incrimination that necessarily attaches to the information that is required to be given in the schedule, and in the absence of the facts and details of what that information would be, there is no basis upon which the court could sustain the asserted right of the bankrupts to decline to comply with the requirements of the law."

Nothing is here indicated as to the kind of "criminal case" which Lakis fears. It is therefore impossible for this Court now to say how the answers to any questions in the schedules could conceivably incriminate him. It is difficult to see, for example, how listing the unpaid taxes of bankrupt could incriminate Lakis, or listing property claimed to be exempt, or answering "none" to some types of property which the bankrupt undoubtedly has never had (for example, real estate, farming stock and implements of husbandry, horses, cows, sheep, etc.).

It must be remembered in this connection that a bankrupt may not simply claim that information is unknown to him, if with reasonable diligence he can secure the information.

It must also be remembered that all information must be given which would not incriminate a bankrupt, even if some cannot be given because of a reasonable fear of self-incrimination. A general or blanket refusal is wholly improper. "The bankrupt must make a bona fide effort to comply with the provisions of the Act without incriminating himself". 5 Remington on Bankruptcy

(Henderson ed.) 93. There must be "an effort in good faith by the bankrupt to file a schedule that obeys the act up to the point where the court can see that further obedience would violate the constitutional protection." In re Podolin, 202 F. 1014, 1016 (E.D.Pa. 1913), affirmed Podolin v. Lesher Warner Dry Goods Co., 210 F. 97 (3d Cir. 1913).

■■ It is accordingly adjudged that John Lakis is in contempt of court for disobedience of the lawful orders of the Referee in Bankruptcy herein. A direction for commitment of Lakis will be withheld in order to afford him a further opportunity to file the required schedules.

It is ordered that within ten days of service upon John Lakis of a copy of this order he prepare, make oath to, and file in court a schedule of the property of the bankrupt John Lakis, Incorporated, showing the amount and kind of property, the location thereof, and its money value, in detail; and a list of all the creditors of the bankrupt John Lakis, Incorporated, including all persons asserting contingent, unliquidated, or disputed claims, showing their residences or places of business, if known, or if unknown that fact to be stated, the amount due to or claimed by each of them, the consideration thereof, the security held by them, if any, and what claims, if any, are contingent, unliquidated, or disputed; and a claim for such exemptions to which the bankrupt may be entitled; all in triplicate, one copy for the Clerk, one for the Referee, and one for the trustee.

It is further ordered that said schedule and list be filed substantially in the form prescribed by General Order in Bankruptcy 38 as Schedules A and B of Form 1.

■ It is further ordered that each and every question or item of information in said Schedules A and B be answered or supplied by John Lakis or a statement made as to why the question is not answered or information supplied. If any question is not answered or item of information supplied by reason of a claim that to answer or to supply might incriminate John Lakis, then a supporting explanation shall be submitted by John Lakis or his counsel specifying the basis for such claim in sufficient detail so that the Court can determine if the claim is properly invoked. If so advised, the supporting explanation may be submitted to the Court in a sealed envelope for the use of the Court only and if so submitted, the supporting explanation, after consideration by the Court, will be again sealed in an envelope to be available only to any reviewing court before which this matter may hereafter be brought.

It is further ordered that in making oath to the schedules, John Lakis may if so advised sign and make oath without stating whether he is an officer, director or stockholder of the bankrupt.

It is further ordered that, until consideration of the schedules, if any, filed by John Lakis in compliance with the foregoing order, a direction as to the commitment of John Lakis or as to other punishment be withheld.

So ordered.