402 F.Supp. 43 (1975)
In the Matter of COMAC COMPANY, a Michigan General Partnership, Bankrupt.
Alexander G. ANDREWS, Trustee in Bankruptcy, Appellant,
v.
AMERICAN AIRLINES et al., Appellees.
No. 71-2449.
United States District Court, E. D. Michigan, S. D.
October 15, 1975.
*44 Irving A. August, Southfield, Mich., for bankrupt.
James M. Wienner, Lewis M. Slater, Detroit, Mich., V. John Manikoff, Pontiac, Mich., for appellant.
Ivan M. Forbes, Pontiac, Mich., Alexander G. Andrews, Detroit, Mich., Dickinson, Wright, McKean & Cudlip, Bloomfield Hills, Mich., W. Robert Chandler, Peter R. Thurber, Herbert N. Weingarten, Detroit, Mich., for appellees.

MEMORANDUM OPINION
FEIKENS, District Judge.
This case raises the apparently novel issue of the effect of the failure of a bankruptcy judge to cause the bankrupt to make a timely filing of a complete list of creditors, as required by 11 U.S.C. § 67(a) (2), (3) (1968), upon the allowability of claims filed by creditors more than six months after the first date set for the first meeting of creditors, i. e., beyond the limitation period prescribed by 11 U.S.C. § 93(n) (1968). Comac Company, a Michigan general partnership, was adjudicated a bankrupt on February 14, 1972. Notice of the first meeting of creditors was sent on March 14, 1972 and the meeting was held on March 24, 1972. In the course of the meeting it was called to the attention of the bankruptcy judge that the list of creditors who had received notice was incomplete, certain "contingent" creditors having been omitted. The bankruptcy judge ordered that the meeting be adjourned until such time as all creditors could be noticed, and ordered the bankrupt to file complete schedules by April 24, 1972. For reasons that do not appear in the record, the bankrupt neglected to file complete schedules until December 20, 1972. In the amicus brief of the Federal Deposit Insurance Corporation at page 2 it is stated:
"The bankrupt has offered no explanation for its failure to file complete schedules until the lapse of more than ten months following its adjudication in bankruptcy, apart from the assertion that its bookkeeper was frequently unavailable to accomplish their preparation."
Following submission of complete schedules, notice was sent to all scheduled creditors on February 8, 1973, on a computer form that set the date for the "first meeting of creditors" for February 22, 1973 and stated that "all claims must be filed within six months from the date of the first meeting of creditors". Forty new claims were filed as a result of this notice, totaling around $4.5 million or approximately one-third of the dollar amount of all claims filed.[1] The trustee has cash on hand of around $1.2 million, with some additional assets yet to be liquidated.
The trustee objected to all claims filed after September 24, 1972, i. e., six months after March 24, 1972, the first date set for the first meeting of creditors. 11 U.S.C. § 93(n) provides in relevant part:
"Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed."
*45 At a hearing on November 16, 1973, the bankruptcy judge denied the trustee's objection and allowed the late claims. The court stated that no "notice within the contemplation of the act was ever given until the Court caused the computer to give that notice [on February 8, 1973]". The bankruptcy judge held that to disallow the late claims as to creditors who lacked notice would deny due process.[2]
The limitation period of 11 U.S.C. § 93 (n) is absolute on its face and without express exception applicable in this case. Many courts have held that the statute leaves no room for discretionary extensions of time. See, e. g., Wheeling Valley Coal Corp. v. Mead, 171 F.2d 916, 920 (4th Cir. 1949), where it was stated:
"The courts have manifested a positive tendency to strictly enforce the limitation provision of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. n, even to the point of holding that the statutory period is mandatory and that the courts have no power either to permit a late filing of claims or to extend the time set out in the statute."
In Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), however, the Supreme Court held that a bankruptcy court had the equitable power to disallow the claim of the controlling stockholder of a bankrupt corporation upon finding a "planned and fraudulent scheme" to defeat the rights of other creditors. In a footnote, the Court stated:
"[E]ven though the act provides that claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication, the bankruptcy court in the exercise of its equitable jurisdiction has power to permit claims to be proved thereafter in order to prevent a fraud or an injustice."
308 U.S. at 305 n.11, 60 S.Ct. at 244. While this proposition has correctly been characterized as dictum, see, e. g., Milando v. Perrone, 157 F.2d 1002, 1004 (2d Cir. 1946), it must be remembered that even dictum is entitled to serious consideration by the lower federal courts when it appears in an opinion by the Supreme Court. Since docket constraints do not permit the Supreme Court to pass upon all issues of federal law that arise within the system, the Court frequently paints with a brush somewhat broader than necessary to decide the case immediately before it in order that general guidance may be provided to the courts below.
Indeed, the dictum in Pepper was followed by a district court of this circuit in In re Bender Body Co., 47 F.Supp. 867 (N.D.Ohio 1942). In that Chapter X proceeding, claims were required to be filed within three months after the first date set for the first meeting of creditors; the referee's notice, however, erroneously stated that the period was six months. In allowing the claims filed later than three but earlier than six months, the court stated:
"In the case of Pepper v. Litton, supra, the equitable jurisdiction was exercised in order to relieve against fraud. But it seems to this court that the principles established are broad enough to enable the court to relieve against mistake induced by the error of its own officers. It seems indeed that the authority of courts to relieve against their own errors is inherent."
47 F.Supp. at 869. There is no merit to appellees' argument that their delay in filing here was "induced by the erroneous notice", as was the case in Bender. The present case is clearly distinguishable in that the statutory period had lapsed before the second notice was sent; thus appellees' failure to file within the statutory period cannot have been "induced" by the erroneous notice.
There is, however, another ground upon which appellees' failure to file can *46 be said to result from error on the part of the bankruptcy judge. As noted in the brief of appellee F. S. Ford, Jr., at 6-7:
"It can be argued that the failure of the Trustee to file schedules within the time required by the act, together with inadequate notice to creditors, was the proximate cause of the delay in the filing of claims by the Appellee and other creditors whose claims were filed in response to the Court's notice of February 8, 1973."
If the bankruptcy judge's order of March 24, 1972 had been enforced, complete schedules would have been filed by April 24, 1972. This would have given ample time for a second notice to be sent and claims to be filed prior to September 24, 1972.
It is not merely that principles of sound judicial administration require a bankruptcy judge to see to the timely filing of complete lists of creditors; an affirmative duty is imposed by the Bankruptcy Act itself. 11 U.S.C. § 67(a) provides in relevant part:
"Referees shall . . . (2) prepare and file the schedules of property and lists of creditors required to be filed by the bankrupts or cause the same to be done when the bankrupts fail, refuse, or neglect to do so; (3) examine all schedules of property, lists of creditors, and statements of affairs, filed as provided under this title, and cause such as are incomplete and defective to be amended . . .." (Emphasis added.)
The bankruptcy judge was aware that creditors had been omitted from the list that had been filed. Indeed, he ordered complete schedules to be filed within thirty days. It was his duty under subsection (a) (2) to cause these schedules to be filed when the bankrupt "failed, refused, or neglected to do so"; since the schedules filed were incomplete, it was his duty under subsection (a)(3) to cause them to be amended. As stated by Judge Friendly in In re Ira Haupt & Co., 398 F.2d 607, 612 (2d Cir. 1968):
"A referee in bankruptcy is not simply an umpire calling balls and strikes. He has an affirmative responsibility for the proper handling of the estate, and that is not always discharged merely by ruling on papers the parties have presented to him."
In In re John Lakis, Inc., 228 F.Supp. 918 (S.D.N.Y.1964), the court held that an officer of a bankrupt corporation could be held in contempt for failing to comply with an order by the referee in bankruptcy to file schedules. The court stated: "The order plainly was not only within the authority of the Referee but the Referee was under a duty to make it. 11 U.S.C. § 67, sub. a(2)." 228 F.Supp. at 919 (emphasis added).
In the present case the bankruptcy judge should have enforced his order of March 24, 1972 to the end of giving the omitted creditors notice in time to file by September 24, 1972. As in Bender, supra, his action in permitting claims to be filed after that date was a proper exercise of equitable discretion to relieve against late filing.
Accordingly, the bankruptcy court's allowance of these claims under these circumstances will not be disturbed and the appeal is denied.
An appropriate order may be submitted.
NOTES
[1] Since the only issue before this court is the allowability of the late claims in light of 11 U.S.C. § 93(n), no opinion is expressed with regard to any objections the trustee may have to their allowability on other grounds.
[2] It is not necessary, in view of the holding herein, to reach the constitutional question.