**In re David A. CRABTREE, Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court,
E.D. Tennessee.

March 14, 1984.

See also, Bkrtcy., 39 B.R. 726.

Cadwalader, Wickersham & Taft, Murray Drabkin, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C. John A. Walker, Jr., Mary C. Walker, Knoxville, Tenn., for trustee Norwood.

Zusmann, Small, Stamps & White, S.J. Zusmann, Jr., Atlanta, Ga., Ritchie, Chadwell & Eldridge, P.C., Robert W. Ritchie, Wilson S. Ritchie, P.C. Wilson S. Ritchie, Knoxville, Tenn., for debtor Crabtree.

Morton, Lewis, King & Krieg, Mary M. Farmer, Knoxville, Tenn., for Federal Deposit Ins. Corp.

Heiskell, Donaldson, Bearman, Adams, Williams & Kirsch, Craig J. Donelson, Knoxville, Tenn., for First Tennessee Bank.

## MEMORANDUM ON TRUSTEE'S MOTIONS FOR CONTEMPT

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the involuntary debtor's failure to comply with both his statutory duties, arising under 11 U.S.C.A. § 521 (1979), and two orders of this court is contemptuous. If so, the court must also determine whether it has authority, pursuant to either 11 U.S.C.A. § 105 (1979) or 28 U.S.C.A. § 1481 (Supp.1983), to grant any relief to the trustee.

I

An involuntary bankruptcy petition, 11 U.S.C.A. § 303 (1979), was filed against the debtor on July 14, 1983. A restraining order was entered at 5:20 p.m. on August 16, 1983, prohibiting the debtor, in part, from transferring or entering into any transaction involving property having a value in excess of $1,000.00. The restraining order expressly provides that the debtor is also enjoined from effecting any of the proscribed acts through an "agent, employee, associate, acquaintance, or entity." An order for relief under chapter 7 was en-

tered on August 22, 1983. Asserting various constitutional privileges, the debtor tardily filed schedules and a statement of financial affairs providing no information whatsoever. The statement of financial affairs and the schedules, filed on September 28, 1983, appear to have been signed by the debtor; however, these documents do not satisfy his duty under 11 U.S.C.A. § 521(1) (1979). The debtor's only response to questions in the statement and schedules is: "Debtor, upon advice of counsel, asserts his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and respectfully refuses to answer questions on the grounds that the answers might tend to incriminate him." When examined at the meeting of his creditors the debtor has likewise declined to answer questions concerning his financial affairs.

The trustee of the debtor's estate, Francis W. Norwood, was chosen at a meeting of creditors on September 29, 1983. See 11 U.S.C.A. § 702 (1979 & Supp.1983). His election as trustee was approved by the court on September 30, 1983.

On January 13, 1984, the trustee filed an application [1] to hold the debtor in contempt for failure to: (1) turn over property of the estate, including recorded information; [2] (2) provide required information about his financial affairs; [3] and (3) submit to an examination by his creditors and the trustee. [4] Further, the trustee asserts that the debtor has concealed assets that are property of the estate, 11 U.S.C.A. § 541 (1979), and that the debtor's "consistent pattern of contumacious conduct" warrants a finding of civil contempt. Imposition of a daily fine of $1,000.00, payable to the estate from postpetition assets of the debtor, and

imprisonment of the debtor until his alleged contempt is purged is sought by the trustee. Additionally, the trustee seeks recovery of his expenses, including attorney fees, incurred as a result of contempt proceedings and two adversary proceedings commenced to recover motor vehicles. A motion filed on February 6, 1984, to dismiss the trustee's application to hold the debtor in contempt was denied.

The proof adduced at a hearing on February 9, 1984, conclusively establishes that the debtor had theretofore failed to turn over property of the estate, despite a statutory obligation to do so. 11 U.S.C.A. § 521(3) (1979). By letter of October 7, 1983, to Wilson S. Ritchie, an attorney for the debtor, demand was made by the trustee's attorneys for turnover of particularly described firearms, jewelry, a mink jacket, a yacht, and "[a]ny and all motor vehicles presently owned, possessed or controlled" by the debtor. [5] Additionally, demand was made for the surrender of books and records, as well as evidence of the debtor's ownership interest, relating to fifty-one (51) entities. A reply letter, dated November 4, 1983, includes a response pertaining to each item and entity identified in the October 7, 1983, demand letter. [6] Also, a statement of net worth was attached to the reply letter. This financial statement reflects that as of July 15, 1982, the total value of the debtor's assets was $18,911,-499.00, including $1,076,000.00 in cash and cash items. His net worth was reportedly $15,539,071.00. However, as of January 13, 1984, the value of assets recovered by or turned over to the trustee represents a mere fraction of the debtor's former reported net worth. [7]

---

1. An attorney for the trustee orally moved to amend the application by designating the trustee's request as a motion as opposed to an application. See Bankruptcy Rule 9013.

2. See 11 U.S.C.A. § 521(3) (1979).

3. See 11 U.S.C.A. § 521(1) (1979).

4. See 11 U.S.C.A. § 343 (1979).

5. See Exhibit 2 to the trustee's January 13, 1984, memorandum supporting his motion to hold the debtor in contempt.

6. See Exhibit 1 introduced at the February 9, 1984, hearing.

7. According to the trustee the only assets turned over to him as of on or about January 13, 1984, were: two watches, title to a 1979 Ferrari automobile and $10,000.00, representing a down payment on the Ferrari; some stock certificates

A certificate of title to a 1979 Ferrari was tendered with the November 4th letter. It was also reported that the vehicle was in the possession of James Clifford, Classic Cars, Hilton Head Island, South Carolina. An adversary proceeding was commenced by the trustee on December 2, 1983, to recover the Ferrari or the proceeds from its sale.[8] A cashier's check, dated August 17, 1983, in the amount of $10,-000.00, payable to "Patty Shelby, Agent" was given to Shelby, the debtor's personal secretary at the time, as a down payment on the Ferrari. Either this cashier's check or funds from the negotiation thereof was deposited on August 18, 1983, with Wilson S. Ritchie's office manager as a payment against the debtor's legal fees. On December 22, 1983, stating that at the time of receipt he was unaware that the $10,000.00 might be property of the estate, Wilson S. Ritchie tendered a $10,000.00 cashier's check to the trustee. These funds represent the only cash directly received by the trustee from the debtor as of February 17, 1984.

On January 19, 1984, the trustee discovered that the debtor had renewed his registration of a 1973 Jaguar automobile on August 23, 1983, one day after entry of the order for relief under chapter 7. Written demand was made immediately for the turnover of the Jaguar. When the vehicle was not surrendered, an adversary complaint was filed in this court on January 27, 1984.[9] The Jaguar was turned over on February 8, 1984.

The debtor's July 15, 1982, financial statement reflects ownership of marketable securities reportedly costing $1,499,980.00; the represented market value of these securities is $2,097,010.00. The November 4th letter of Wilson S. Ritchie recites in material part: "Referring to ... investments and marketable securities, Mr. Crab-

tree represents that the stocks have either been sold or are presently being held by brokerage houses for sale." Yet, the trustee testified that none of these securities had been turned over to him as of February 9, 1984.

Additionally, the trustee testified that a $200,000.00 note payable to the debtor by Theodore H. Erck, Trustee for the David A. Crabtree Irrevocable Trust, had not been surrendered; that a counterfeit Rolex watch, valued at approximately $150.00, was tendered after demand was made for a Rolex watch insured for $7,950.00; that he took possession of a partially furnished condominium at The Pembroke in Knoxville, Tennessee; that although the contents of this unit were insured for $50,-000.00 the value thereof is much less; that he had discovered a leasehold interest of the debtor for a farm in Union County, Tennessee; and that a post petition transfer of $300,000.00 to a bank account in Grand Cayman had been effected by the debtor.

The evidence is conclusive that the $200,-000.00 note is property of the estate.[10] With regard to the Rolex, the trustee initially received a counterfeit watch bearing the Rolex emblem. After discovering the deception and upon further demand, a genuine Rolex watch was tendered to him on November 5, 1983. There is no explanation as to the disposition of the furnishings removed from The Pembroke before possession was turned over to the trustee. There were no beds there when the trustee took possession. Further, there is no explanation respecting the leasehold interest in the Union County farm. Finally, the trustee established that the debtor in his capacity as president of Mid South Leasing Company, Inc. executed a check, dated August 6, 1983, for $300,000.00 against the

and promissory notes; and some recorded information relating to property of the estate. See Memorandum of Points and Authorities in Support of Trustee's Application to Hold Debtor in Contempt at 3–5.

**8.** *Norwood v. Clifford,* Adv. No. 3–83–0940, is presently pending in this court.

**9.** *Norwood v. Crabtree,* Adv. No. 3–84–0022.

**10.** According to the debtor's attorneys the original of this note has been misplaced. See Exhibit 6 introduced at the February 17, 1984, hearing on the trustee's second motion for contempt.

corporate account with Prudential-Bache.[11] Mid South Leasing Company, Inc. is also the payee of the check, which is endorsed by the debtor in his official capacity. A second endorsement recites "PAY TO THE ORDER OF SWISS BANK & TRUST CORP. LTD. GRAND CAYMAN." This check was not debited against the Mid South account until September 1, 1983, subsequent to the deposit of a check for $300,-000.00 issued by Norris Industries, Inc. on August 15, 1983, to the order of "Allen Crabtree, Trustee."[12] The Norris Industries check is endorsed "Allen Crabtree, Trustee" and "FOR DEPOSIT ONLY Prudential-Bache Securities, Inc."

## II

Two orders were entered at the conclusion of the February 9th hearing. Order No. 49 required the debtor to forthwith surrender to the trustee all recorded information relating to property of the estate not constitutionally privileged from production. Order No. 50 required the debtor to turn over to the trustee all property of the estate within forty-eight (48) hours. Each order further required written certification of compliance by the debtor within ninety-six (96) hours. On February 14, 1984, beyond the time fixed by the court, the debtor filed separate, but similar, statements pertaining to his purported compliance with Orders Nos. 49 and 50.

Pursuant to Order No. 50, on February 11, 1984, the debtor turned over stock certificates from eight different entities, seven subordinated debentures, three warranty deeds, two promissory notes, statements evidencing an IRA account, a lease relating to a farm in Union County, Tennessee, and other written documents representing miscellaneous interests. In addition, the debt-

or tendered without actually delivering: 60 (plus) head of cattle; one bed; one chair; one desk; one television; and a 1984 Corvette automobile.

On February 15, 1984, the trustee filed a second motion for contempt, asserting that numerous items had neither been accounted for nor turned over by the debtor. Also, the trustee contends that the debtor's certification relative to turnover of property of the estate fails to satisfy the requirement of Order No. 50.

On February 17, 1984, the court held a hearing on the trustee's second motion for contempt. Proof was introduced that the debtor entered into a safe deposit box contract on November 17, 1980, with United American Bank of Knoxville and that the key had not been surrendered to the trustee. Robert Ritchie, an attorney for the debtor, represented to the court that the key was lost and that the debtor had no objection to the immediate, forcible opening of the deposit box. Further, the trustee proved that the debtor opened an account on October 7, 1983, with the Sun Bank of Volusia County, Florida. The trustee insists the funds deposited in this account ($2,703.89 balance as of February 7, 1984) are property of the estate. 11 U.S.C.A. § 541 (1979).[13] Further, the trustee demonstrated that the debtor was the president and one of two directors[14] of the Crabtree Holding Company, Inc., the sole shareholder of Mid South Leasing Company, Inc., as of June 24, 1983.[15] Also, although the trustee further established that two guns and some furniture had not been turned over, the delay in surrender, at least since February 9, 1984, may be attributable to a misunderstanding relative to delivery. *No explanation, however, is proffered for the*

---

**11.** See Exhibit 4 introduced at the hearing on February 9, 1984.

**12.** See Exhibit 6 introduced at the hearing on February 9, 1984.

**13.** The Sun Bank has placed a hold on the funds in this account.

**14.** The other director was Hal H. Bibee.

**15.** Although they do not acknowledge that the $300,000.00 is property of the estate, the debtor's attorneys have represented to the court that their client has done all that he can do to arrange for the transfer of these funds from the Grand Cayman account to the trustee's account. No recorded information pertaining to the account has been made available for the trustee's examination.

failure to surrender these items previous to the court's turnover order.

The debtor has violated Order No. 49 by failing to surrender or account for books and records relating to property of the estate. West Knoxville Investment Co., Inc. is a Tennessee corporation wholly-owned by the debtor. However, the debtor did not turn over, or otherwise account for, the corporate books and records of six corporations owned by West Knoxville Investment Co., Inc.[16]

### III

■ Section 1481 of Title 28 of the United States Code enacts: *"Powers of bankruptcy court*—A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a *criminal* contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment."* (Emphasis added.) Legislative history of the Bankruptcy Reform Act of 1978 evinces a congressional intent to broaden the contempt power of the bankruptcy courts:

> The bill contemplates that the new bankruptcy courts will have contempt power commensurate with their responsibilities, and equal to the contempt power of other Federal courts, because
>
> [t]here is inadequate authority on the part of the bankruptcy judges in the contempt area. If there is major, serious contempt that involves something more and requiring something more than a fine of $250, it has got to be transferred and certified to a district judge. We feel that is totally inappropriate and tends to weaken the respect that litigants and lawyers should entertain for the bankruptcy court.

The jurisdiction of the proposed bankruptcy courts is substantially expanded. The Hearings and the Commission Report are replete with evidence of the need for expanded jurisdiction. The new courts will have jurisdiction over "all proceedings arising under title 11, or arising under or related to a case under title 11." Possession or consent will no longer be necessary to the jurisdiction of the bankruptcy courts. The new courts must be given adequate power to enforce this jurisdiction. (Footnotes omitted.)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad. News, 5787, 5963, 5974.

This expansion[17] of a bankruptcy court's authority encompasses the power to imprison as a sanction for *civil* contempt. See *Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Constr. Co.)*, 20 B.R. 925, 929 n. 10 (Bkrtcy.M.D.Tenn.1982).

■ Inherent power exists in a court to enforce compliance with its lawful orders through civil contempt sanctions. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). A bankruptcy court may exercise such power, *In re Jolly Joint, Inc.*, 23 B.R. 395 (Bkrtcy.E.D.N.Y.1982); 1 *Collier on Bankruptcy* ¶ 3.01, 3–109 (15th ed. 1983); *contra Lindsey v. Cryts (In re Cox Cotton Co.)*, 24 B.R. 930 (E.D.Ark.1982); the exercise of such power is subject to legislative restriction. *See Michaelson v. United States*, 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). But, Congress has vested the bankruptcy court with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [11]." 11 U.S.C.A. § 105(a) (1979).

---

**16.** The six corporations are: Cedar Bluff Properties, Inc.; Eastern Resources, Inc.; Lone Mountain Corporation; Northridge Development Company, Inc.; Southern Resources, Inc.; and Tennessee-Carolina Investors, Inc.

**17.** Until the adoption of former Bankruptcy Rule 920, certification to the district court of facts constituting contempt was required. See former 11 U.S.C.A. § 69 (1968) (repealed 1978);

*O'Hagan v. Blythe*, 354 F.2d 83 (2d Cir.1965) (referee in bankruptcy without authority to punish for contempt). The authority of a referee under former Bankruptcy Rule 920 was limited to imposition of a fine of $250.00 or less as punishment for contempt, civil or criminal. The rule explicitly prohibited a referee from ordering imprisonment.

■ Further, section (d) of the emergency Rule for the Administration of the Bankruptcy Court, entered in the United States District Court for the Eastern District of Tennessee on December 23, 1982, recites in part:

Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings *all acts and duties necessary for the handling of those cases* and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a *criminal* contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials. (Emphasis added.)

The inference is clear that this court has jurisdiction to adjudicate a motion for *civil* contempt under the emergency rule.[18] See *Johns-Manville Sales Corp. v. Doan,* 26 B.R. 919, 923–24 (Bkrtcy.S.D.N.Y.1983).

■ The character and purpose of the action determine whether civil or criminal contempt is involved. *United States v. Mitchell,* 556 F.2d 371, 383 (6th Cir.1977), *cert. denied,* 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed.2d 284 (1977). Generally, a civil contempt proceeding serves only the interest of the complainant; a civil contempt proceeding is remedial and is not intended to deter offenses against the public. *McCrone v. United States,* 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1105 (1939). In contrast, a criminal contempt proceeding is punitive in nature, imposed principally to vindicate the authority of the court. *United States v. United Mine Workers of America,* 330 U.S. 258, 302, 67 S.Ct. 677, 700, 91 L.Ed. 884 (1947). Although the demarcation between civil and criminal contempt is not always distinct,[19] a motion to commit a bankrupt for failure to comply with a turnover order involves *civil* contempt. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929). This court has jurisdiction to act upon the trustee's motions to find the debtor in *civil* contempt. 28 U.S.C.A. § 1481 (Supp.1983); 11 U.S.C.A. § 105 (1979).

IV

As announced from the bench on February 9th, the court is satisfied that the debtor has failed both to turn over property of the estate and to properly assert his constitutional privilege against self-incrimination, with respect to his duty to file a statement of his financial affairs and schedules. The court is further satisfied that the debtor has attempted to impede the administration of the estate. A chapter 7 debtor's duty to surrender property of the estate to his trustee is unequivocal. Nonetheless, nearly six (6) months after entry of the order for relief the debtor had not turned over significant assets of the estate. His surrender of property on February 11, 1984, establishes this fact.

■ Clearly, the debtor's conduct is contemptuous with respect to the statutory duty, created by Code § 521(3), to turn over property of the estate. But the debtor contends that a violation of a specific and definite order of the court is a condition precedent to a finding of contempt. *Frankford Trust Co. v. Allanoff,* 29 B.R. 407 (E.D.Pa.1983). Although the debtor's contention is true as a general rule, there is authority equating the automatic

---

**18.** The constitutionality of the emergency interim rule was affirmed in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 263 (6th Cir.1983). The relevant language of the rule substantially corresponds to the text of a transition provision, section 405(a)(1), of the Bankruptcy Reform Act of 1978.

**19.** See *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441–43, 31 S.Ct. 492, 498–499, 55 L.Ed. 797 (1911); *Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336, 1342–44 (3rd Cir.1976).

stay of Code § 362 with a specific and definite court order. See *Miller v. Savings Bank,* 22 B.R. 479 (D.Md.1982) (willful violation of automatic stay is contemptuous). The court holds that Code § 521 is the functional equivalent of a specific and definite order of the court. At no time has the debtor denied knowledge of his duties under Code § 521. It cannot be gainsaid that he was aware of his obligation to turn over property of the estate, yet he contumaciously ignored this obligation for nearly six (6) months. His apparent indifference to his duties as a chapter 7 debtor is an intolerable affront to his creditors, the trustee, and this court.

 Further, the debtor has violated Order No. 49 requiring the surrender of all recorded information relating to property of the estate not constitutionally privileged. A willful refusal to produce documents when unequivocally ordered to do so is contemptuous. *Flushing Savings Bank v. Parr,* 13 B.R. 1010 (E.D.N.Y.1981). However, willfulness is not an essential element of civil contempt. See *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *TWM Mfg. Co., Inc. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.1983); *In re Sandmar Corp.,* 12 B.R. 910 (Bkrtcy.D.N.M. 1981).

20. See note 16 and accompanying text, *supra.*

21. See *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), wherein an injunction was entered to enjoin violations of the Fair Labor Standards Act:

> [T]he decree directed the respondents to obey the provisions of the Act dealing with minimum wages .... [I]t enjoined any practices which were violations of those statutory provisions. Decrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown....
>
> It does not lie in their [respondents] mouths to say that they have immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in *Maggio v. Zeitz, supra,* 333 U.S. at page 69, 68 S.Ct. at page 408. The instant case is an excellent illustration of how it could operate

 Although Order No. 49 does not specifically identify the recorded information which the debtor is obliged to surrender, the court nevertheless finds contemptuous the debtor's failure to surrender or account for the books and records of Cedar Bluff Properties, Inc.; Eastern Resources, Inc.; Lone Mountain Corporation; Northridge Development Company, Inc.; Southern Resources, Inc.; and Tennessee-Carolina Investors, Inc.[20] Specific identification by the court of the recorded information relating to property of the estate is impossible due to the debtor's lack of cooperation. The lack of specificity under the circumstances in this case does not preclude a determination that the debtor has contemptuously violated an order of this court.[21]

 In response to the court's order requiring certification that he had turned over all property of the estate, the debtor filed the following statement:

(1) Since the date and time stated above I have made a diligent effort to marshal and assemble all property of the estate and to turn over or tender to the Trustee all of such property.

(2) To the best of my ability, within the time limitations stated in said order, I have complied with said order.

to prevent accountability for persistent contumacy. Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught.

*McComb,* 336 U.S. at 191–93, 69 S.Ct. at 500. Although the court recognizes that the debtor enjoys certain constitutional privileges, the court does not intend to be impermissibly frustrated in the administration of this case and has no hesitancy to find that a specific identification of property or books and records is not a prerequisite to a determination of contempt herein. *Contra H.K. Porter Co., Inc. v. Nat'l Friction Products, Inc.,* 568 F.2d 24 (7th Cir.1977) (failure of equity court to spell out specific obligation in text of decree is fatal to any contempt proceeding).

(3) By letter through my counsel, I have advised the Trustee of certain property of the estate of which I have knowledge but which I have been unable to locate and deliver. I will continue to endeavor to locate such property and deliver the same to the Trustee.

(4) Any property which I subsequently learn to be property of the estate I will endeavor to locate and deliver to the Trustee.

(5) By the delivery of the property of the estate to the Trustee I do not waive and do affirmatively exercise all of the rights and privileges to which I am entitled under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and the corresponding provisions of the Constitution of the State of Tennessee.

This equivocal statement is inadequate and does not comply with the court's explicit order.

### V

Having determined that the court has jurisdiction to act upon the trustee's motions for civil contempt and that the debtor is in contempt of an act of Congress and the orders of this court, the question of appropriate relief remains. The trustee seeks an order imprisoning the debtor and fining him $1,000.00 per day, payable from funds which are not property of the debtor's estate, until the debtor: (1) files a statement of financial affairs and schedules; (2) complies with Orders Nos. 49 and 50; and (3) certifies without equivocation that he has surrendered to the trustee all property of the estate. Additionally, the trustee seeks to recover all expenses associated with the contempt proceedings and two adversary proceedings;[22] he also requests a detailed explanation from the debtor's counsel relative to the funds transferred to the Swiss Bank and Trust Corp., Ltd., Grand Cayman.[23]

Sanctions for civil contempt may be coercive or compensatory. The appropriate measure of compensatory damages is actual loss. *United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Actual loss may include attorney fees. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 227 (10th Cir. 1980); *In re Reed*, 11 B.R. 258, 276 (Bkrtcy.D.Utah 1981). Hence, the trustee is entitled to recover all of his expenses, including his attorney fees, in connection with these contempt proceedings and *Norwood v. Crabtree*, Adv. No. 3–84–0022, seeking turnover of a 1973 Jaguar. The trustee is also entitled to any expense he incurred in connection with the November 15, 1983, meeting of creditors which the debtor inexcusably failed to attend. All of these expenses shall be paid by the debtor from funds or property which are not property of the estate.[24]

---

**22.** See notes 8 and 9 and accompanying text, *supra.*

**23.** The trustee also asks the court to: (1) require the debtor to respond to questions propounded pursuant to either Code § 341 or Bankruptcy Rule 2004, offering a factual predicate for the assertion of his constitutional privilege against self-incrimination; (2) order the debtor to respond, on the theory of waiver, to the trustee's questions pertaining to the assets and entities discussed in Wilson S. Ritchie's letter of November 4, 1983, to the trustee's attorney (see note 6, *supra*); (3) require the debtor's counsel to provide a detailed index of all documents, including the debtor's personal records, withheld from the trustee on the basis that the documents or their production is privileged. A further hearing with regard to these matters will be set upon motion of the trustee.

**24.** A hearing will be scheduled to ascertain the amount of these expenses. Based on the *present* record the court cannot find that the debtor is liable for the trustee's expenses in *Norwood v. Clifford*, Adv. No. 3–83–0940, currently pending in this court. When the order for relief was entered on August 22, 1983, the debtor apparently did not have actual possession of the 1979 Ferrari at issue in *Norwood v. Clifford*. Certificate of title to the vehicle was delivered with Wilson S. Ritchie's letter of November 4, 1983, to the trustee, whose complaint relating to the Ferrari was not filed until December 2, 1983. Parties other than the debtor may or may not be liable for the trustee's expenses associated with *Norwood v. Clifford*.

Although they have not acknowledged that the Grand Cayman account is property of the estate, the debtor's attorneys essentially have acknowledged that the funds in the account should be presently turned over to the trustee.

■■■■■ A debtor has a duty to file schedules and a statement of financial affairs, but absent a grant of immunity he is not required to file incriminating information. *See In re Kanter*, 117 F. 356 (S.D. N.Y.1902). However, a debtor may not decline to file schedules on the basis of a naked assertion that the information requested may tend to incriminate him. *In re Arend*, 286 F. 516 (2d Cir.1922); *Podolin v. Lesher Warner Dry Goods Co.*, 210 F. 97 (3rd Cir.1914); *In re John Lakis, Inc.*, 228 F.Supp. 918 (S.D.N.Y.1964). The "say-so" of a witness, in this context the debtor, does "not of itself establish the hazard of incrimination." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Instead, it is the court's responsibility to determine whether a debtor's refusal to provide information is justified and to compel production of the requested information if it clearly appears the debtor is mistaken in the assertion of his constitutional privilege. *Id.* *Collier* recites in material part:

It is clear that it is the responsibility of the court to determine whether the debtor ... has reasonable ground to fear that his answer may incriminate him. This determination is to be made on the basis of the circumstances of the case and the nature of the evidence which the witness is called upon to give. When the basis for such apprehension is not apparent there may very well be an obligation on the part of the debtor to produce the facts on which he bases a claim of privilege.

If the court is convinced that the question cannot possibly incriminate the witness he can be compelled to testify. The determination by the court regarding possible incrimination by the debtor or other witness is a difficult one and a heavy duty rests on the judge before whom the privilege is invoked. (Footnotes omitted.) [25]

2 *Collier on Bankruptcy* ¶ 344.03, 344–9 (15th ed. 1983).

■■■■ Since the statement of financial affairs and schedules heretofore filed do not satisfy the debtor's duties, he must file a second statement with official schedules, addressing each question and asserting any privilege claimed on an item-by-item basis.[26]

■■■■ Based on the irrefragable failure of the debtor to surrender property of the estate and to cooperate with the trustee, the debtor must turn over to the trustee, or account for, *all* property of the estate, 11 U.S.C.A. § 541 (1979), and unconditionally certify without equivocation or qualification that he has done so within five (5) days of the entry of the court's order accompanying this memorandum. The debtor's written certification of his compliance shall be filed with the clerk of this court. Should the debtor fail to comply with the order accompanying this memorandum, a daily fine in the amount of $1,000.00, payable to the Treasury of the United States from funds of the debtor which are not property of the estate, shall be imposed upon the debtor until he complies with the order, provided that the fine imposed shall not exceed $10,000.00. If the debtor has not complied with the court's order within fifteen (15) days from entry thereof, he shall surrender himself to the custody of the United States Marshal for the Eastern District of Tennessee and re-

25. See, however, 3 *Collier on Bankruptcy* ¶ 521.-08, 521–33 (15th ed. 1983), wherein it is stated that the debtor's simple statement that the information sought in the schedules might incriminate him may prevent the court from making further inquiry. This court does not concur in this view.

26. If the trustee believes that the debtor's responses are insufficient he shall file an appropriate motion, and a hearing will be scheduled to ascertain whether any claim of privilege has been properly asserted by the debtor. See *In re U.S. Hoffman Can Corp.*, 373 F.2d 622 (3rd Cir. 1967).

main in custody until such time as he purges himself of his civil contempt of his duties under 11 U.S.C.A. § 521 (1979) and the orders of this court.

Finally, the facts of this case shall be certified to the United States District Court for the Eastern District of Tennessee for the purpose of determining whether the debtor should be held in criminal contempt due to his failure to comply with the provisions of 11 U.S.C.A. § 521 (1979) and Orders Nos. 49 and 50 of this court.