**In re Kenneth R. KRISLE and LaVon E. Krisle, Debtors.**

**No. 584–00065.**

United States Bankruptcy Court, D. South Dakota.

Oct. 11, 1985.

Haven L. Stuck, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D., for Creditor First Bank of South Dakota, N.A.

Raymond R. DeGeest, Rapid City, S.D., for debtors Kenneth R. Krisle and LaVon E. Krisle.

John M. Fousek, Fousek, Lefholz & Mairose, Rapid City, S.D., Max A. Gors and James E. Carlon, Gors, Braun & Carlon, Pierre, S.D., Shelley B. Heller, Fort Pierre, S.D., Carter King, Reno, Nev., Judith A. Atkinson, Bismarck, N.D., and Pierre, S.D., for debtors.

## FINDINGS AND DECISION

PEDER K. ECKER, Bankruptcy Judge.

### I. *Introduction*

This matter came for hearing before the Court on October 2, 1985, in Pierre, South Dakota. Attorney Haven L. Stuck represented the creditor, First Bank of South Dakota, N.A., and Attorneys Shelley B. Heller and Carter King represented the debtors, Kenneth R. Krisle and LaVon E. Krisle. Several related matters were taken under advisement: attorney withdrawal; automatic stay; change of venue; contempt of debtor; contempt of attorney; disqualification of judge; and stay of bankruptcy proceedings.

The relevant facts and procedural history are these.

### II. *Facts and Procedural History*

The Krisles (hereafter debtors) filed a Chapter 11 petition for reorganization on June 1, 1984. The debtors are farmers.

Raymond R. DeGeest was the attorney of record at the time of filing. On September 25, 1984, John M. Fousek, another Rapid City attorney, was approved by the Court to represent the debtors. He was subsequently allowed to withdraw, and, on January 9, 1985, Max A. Gors, Pierre, South Dakota, was approved as the debtors' attorney. Attorney Gors was subsequently allowed to withdraw. At the October 2, 1985, hearings, Attorneys Shelley B. Heller, Fort Pierre, South Dakota, and Carter King, Reno, Nevada, were approved by the Court to represent the debtors.

A confirmation hearing on the debtors' third amended plan was scheduled for May 21, 1985, in Rapid City, South Dakota. Prior to this hearing, Mr. Gors, on behalf of his clients, made several attempts to negotiate with their major secured creditor, First Bank of South Dakota, Lemmon Branch. When these negotiations proved unsuccessful, the parties agreed to continue the hearing on plan confirmation.

On May 23, 1985, Attorney Haven L. Stuck, on behalf of First Bank, filed a Motion to Dismiss which also requested an expedited hearing. Accompanied by a supporting Affidavit, a second motion was filed on June 3, 1985. This was a Motion for Issuance of Order to Show Cause, for Turnover of Property, for Restraining Order, and for an expedited hearing. Because the Court was in transit to Pierre, South Dakota, for its June court term prior to the filing of the second motion and affidavit, Mr. Stuck provided the Court a copy at the June 4, 1985, hearing. The certificate of mailing attached to the pleadings indicated that Mr. Stuck had sent copies to both the debtors and their attorney, Mr. Gors, on May 29, 1985.

The Court reviewed the pleadings. The accompanying affidavit recited that First Bank had been informed that the debtors had withdrawn all the funds from the debtor-in-possession account and closed the account. Further, that the amount withdrawn was approximately $100,000 which was cash proceeds from sale of livestock secured to the bank. Acting pursuant to

11 U.S.C. § 362(f), the Court determined that there was both an emergency situation and that it should be immediately heard. Neither the debtors nor their attorney, Mr. James E. Carlon (Gors Law Firm), raised any objections.

Attorney Stuck called the debtor, Kenneth R. Krisle, as a witness. When asked his name, Mr. Krisle refused to answer, basing his refusal on protection of the Fifth Amendment. The debtor continued to rely on the Fifth Amendment when asked who his attorney was and whether he had a debtor-in-possession account. Attorney Carlon requested that his client be granted immunity pursuant to 11 U.S.C. § 344. The Court, after confirming that Mr. Krisle would not answer any questions, ordered that he turn over the cash collateral. When Mr. Krisle disobeyed this order, he was held in civil contempt. Following proper civil contempt procedures, the Court ordered the debtor into the custody of the United States Marshal until the proceeds of the debtor-in-possession account is made available to the Clerk of the Bankruptcy Court.

The order entered stated that, upon reviewing the case file, sufficient evidence was present for the Court to find that there was sufficient showing that the debtors had closed the debtor-in-possession account at the West River State Bank in Hettinger, North Dakota, and had withdrawn all funds consisting of not less than $94,207.00. Findings included that the First Bank of South Dakota, Lemmon, would be irreparably harmed if the cash collateral was not turned over to the Court. It was ordered that Kenneth R. Krisle and LaVon E. Krisle turn over the cash collateral to the Clerk of the United States Bankruptcy Court; that the debtors file a complete accounting; and that Kenneth Krisle be remanded to the custody of the United States Marshal until the proceeds withdrawn from the debtor-in-possession account are deposited with the Clerk of the

Bankruptcy Court. Mr. Krisle was remanded to the Marshal's custody.

On June 10, 1985, David L. Bergren, as attorney for Kenneth Krisle, filed a Petition for Writ of Habeas Corpus in the United States District Court for the District of South Dakota, Central Division.[1] The petition claimed Mr. Krisle was illegally incarcerated for refusing to testify and the court proceeding was invalid because of a lack of notice to the debtor of the motion for turnover of property. Mr. Krisle was released pending the outcome of the hearing.

On July 12, 1985, Attorney Judith A. Atkinson, on behalf of the debtors, filed suit against First Bank and the Bankruptcy Judge (Hon. Peder K. Ecker) in the United States District Court for the District of South Dakota, Western Division. While seeking over three million dollars in compensatory and punitive damages, the complaint alleges, among other things, illegal ex parte contacts between First Bank and the Court and civil rights violations of the debtor. The Court received service of process from the Minnehaha County Sheriff's Department, Sioux Falls, South Dakota, on August 23, 1985.

On August 8, 1985, Attorney Max A. Gors filed a Motion and Notice of Motion for Allowance of Administrative Expense Claim and Lien. This was a request by Attorney Gors for attorney's fees as an administrative expense from his previous representation of the debtors in their Chapter 11 reorganization.

On August 14, 1985, Attorney Raymond R. DeGeest filed a Motion to Withdraw. No responsive pleadings were filed.

On August 20, 1985, the Petition for Writ of Habeas Corpus was heard in the United States District Court for the District of South Dakota with the Honorable Donald J. Porter, presiding. Findings were issued

---

1. The proper remedy should have been an appeal to the United States District Court under 28 U.S.C. § 158(a). A stay pending appeal may be requested under Bankr.R.P. 8005. A writ of habeas corpus is an extraordinary writ and only used when direct appeal is exhausted.

on August 23, 1985. The United States District Court, among other things, found:[2]

1) That this is a civil contempt matter;

2) That the Bankruptcy Court does not have to confront the Fifth Amendment to determine whether a violation of an order to turn over cash proceeds has occurred in a civil contempt matter; and

3) That the Bankruptcy Court may impose a fine and/or imprisonment for an indefinite period of time to compel compliance with a court order.

On August 27, 1985, Attorney Stuck, on behalf of First Bank, filed a Motion for Issuance of Order to Show Cause, for Turnover of Property, for a Restraining Order, and for an Order Holding Debtors in Contempt and an Affidavit in Support of Motion for Show Cause Order. Attached, as part of the Affidavit, were copies of a Statement of Debtors' Account for the month of May, 1985, and a check drawn on this account on May 23, 1985, by Mr. Krisle for the amount of $94,207.81. On this same date, the Bankruptcy Court entered an Order to Show Cause. The Court specifically ordered that this was a proceeding against the debtors for civil contempt for violating provisions of the Bankruptcy Code and previous orders of the Bankruptcy Court. It further ordered that the debtors be prepared to testify as to the whereabouts of all property of the estate and to turn over this property to the Court at that time.

On August 28, 1985, the debtors, pro se, filed a Motion to Disqualify Judge with Affidavit and a Motion to Stay Bankruptcy Proceedings.

On September 3, 1985, the United States District Court for the District of South Dakota, Central Division, entered an order stating that, after reviewing the Writ of Habeas Corpus and all the briefs and after hearing all the arguments, it held the following:[3]

1) The Bankruptcy Court has jurisdiction to issue an order committing a debtor to the custody of the United States Marshal for confinement as a sanction for civil contempt;

2) The Bankruptcy Court can impose sanctions upon a debtor for civil contempt arising from the violation of a bankruptcy statute or rule or an order of the Bankruptcy Court;

3) The debtor entered no objection at the hearing held on June 4, 1985, to the timeliness of the motion for issuance of order to show cause, for turnover of property, for a restraining order, and for an expedited hearing; and

4) The debtor entered no objection at the hearing held on June 4, 1985, for the hearing of the motion for issuance of order to show cause, for turnover of property, for a restraining order, and for an expedited hearing.

The United States District Court then ordered that this matter be remanded to the Bankruptcy Court "specifically to readjudicate the issue of whether one of [the debtors] is in civil contempt of the [Bankruptcy Court] for violating the provisions of a bankruptcy statute or rule or an order of the [Bankruptcy Court]" and that "this Court shall retain jurisdiction over this matter until the Bankruptcy Court has had the opportunity to readjudicate the issue of whether the debtor is in civil contempt of that Court."

On September 6, 1985, the Court ordered an October 2, 1985, hearing.

On September 30, 1985, the debtors, pro se, filed a Motion in Opposition to First Bank of South Dakota's Motion for Issuance of Order to Show Cause, for Turnover of Property, for a Restraining Order and for an Order Holding Debtors in Contempt. Their motion alleged the following:

1) First Bank's motion should be denied because it is unsupported by the

---

**2.** The matter of Kenneth R. Krisle, Petitioner vs. Arlo Mortimer, Hughes County Sheriff, and the United States Marshal, Eugene Abdallah, Respondents vs. First Bank of South Dakota, N.A.,

Intervenor, Civ. No. 85–3038, a habeas corpus proceeding.

**3.** *See* note 2.

Bankruptcy Code, Bankruptcy Rules, or any other proper authority;

2) Because the debtors are farmers who voluntarily filed for Chapter 11 reorganization, they have an absolute right to dismiss their reorganization and, therefore, the cash proceeds are no longer part of a bankruptcy case;

3) First Bank's motion violates the Bankruptcy Code's automatic stay provision;

4) Because the debtor needed the cash proceeds to operate his business and First Bank's interest is adequately protected, the debtor may use the cash collateral;

5) Because an order to turn over proceeds violates the debtor's Fifth Amendment rights and the debtor properly requested immunity under 11 U.S.C. § 344, the debtor may rightfully refuse to turn over the proceeds to the Court; and

6) The Bankruptcy Judge should disqualify himself due to appearances of impropriety and conflicts of interest.

On this same date, the debtors, pro se, also filed a Motion for Automatic Stay and Petition for Change of Venue. Neither was set for hearing nor had a request for hearing been made.

On October 2, 1985, a hearing was held in Pierre, South Dakota. Attorney Stuck represented First Bank of South Dakota and Attorneys Shelley B. Heller and Carter King represented Mr. Krisle. Debtor's counsel were approved by the Court at the beginning of the hearing. After approving Attorney DeGeest's withdrawal motion, the Court consolidated the motion to show cause why the debtor should not be held in civil contempt and the District Court Order to readjudicate civil contempt because they relate to the same issue. Hearing no objections, the Court considered the civil contempt matter.

Attorney Stuck called the debtor, Mr. Krisle, as a witness. The exchange between Attorney Stuck and Mr. Krisle was as follows:

MR. STUCK: Ken, I received a document that you signed dated 26th day of September, 1985, a debtors' motion and apposition to the bank's issuance of order to show cause. Do you remember that document?

MR. KRISLE: Yes, sir.

MR. STUCK: In your objection or your motion and opposition, you indicated that the debtors have deposited and invested said moneys in a proper way in order to preserve said money. Where are those funds deposited?

MR. KRISLE: According to my attorney's, Mr. King's instructions, Your Honor, I stand on my rights of the Constitution to remain silent.

MR. STUCK: Mr. Krisle, did you receive a copy of an order to show cause entered by this Court requiring you to turn over the cash collateral, the proceeds in your Debtor-in-Possession account to the Bankruptcy Clerk?

MR. KRISLE: Yes, sir.

MR. STUCK: And do you have in your possession today available to turn over to the Court the proceeds in the Debtor-in-Possession account?

MR. KRISLE: No, sir.

MR. STUCK: Do you intend to turn over the cash collateral money of ninety-four thousand and some odd dollars to the Court in accordance with that previous order of this Court?

MR. KRISLE: No, sir.

MR. STUCK: Your Honor, in accordance with the previous proceedings in this court and in accordance with the notice that has been given to Mr. Krisle and admitted received by him that he would be held in contempt for failure to turn over the cash collateral held in his Debtor-in-Possession account, I would renew the motion previously filed in writing with this court that the debtors, Kenneth Krisle and Lavon Krisle, be held in civil contempt for violating the cash collateral provisions of the Bankruptcy Code and violating the previous orders of this court that the cash collateral in the account and withdrawn by Mr. Krisle be

turned over to the Clerk of the Bankruptcy Court.

In response, Attorney King argued both that First Bank's security interest, in the approximate amount of $344,935.00, was "adequately protected" because the debtor's value in other real and personal property exceeds the bank's secured amount and that the debtor needed the cash proceeds to operate his business. The Court, however, explained that the use of cash collateral requires proper notice and hearing and, because no notice had been provided, that the use of cash collateral may not be heard. On recross, Mr. Krisle admitted that all the cash proceeds were invested and earning interest. Without further explanation, Attorney King next requested that his client not be held in contempt because 11 U.S.C. § 344 provides his client immunity. The Court reserved ruling on this issue.

Attorney King next contended that the Bankruptcy Code provides his client the right to dismiss his Chapter 11 reorganization, but the Court explained that dismissal is discretionary under 11 U.S.C. § 1112 and dismissal was considered, but denied, at the June hearing because of apparent debtor misconduct. Upon Court inquiry, counsel were allowed time to negotiate to resolve the matter.

When negotiations failed, Attorney Stuck again called Mr. Krisle as a witness. Mr. Krisle admitted that the majority of the $105,853.79 in funds in his debtor-in-possession account were from livestock sales and that, by check dated May 23, 1985, he drew $94,207.81 in cash proceeds from this account. He further admitted that there is presently less than $110.00 in the account but that the account is still open. And he finally admitted that he was aware of both the June and August court orders to turn over the cash proceeds but would neither disclose the proceeds' location nor turn them over to the Court.

After inquiring as to whether Mr. Krisle was aware of proper procedures for the use of cash collateral, the Court and Mr. Krisle had the following exchange:

THE COURT: Let me ask you this then, Mr. Krisle: Do you understand that the Court in ordering you to turn the funds over to the Clerk of this Court pending the further order of the Court, that if you refuse to do that you can be dealt with by way of contempt which may include further incarceration?

MR. KRISLE: I think that's clear at this point, sir.

THE COURT: All right. You may step down. Well, let me ask you this now just directly to you. Do you intend to turn the funds over to the Clerk of this Court as the Court has previously ordered?

MR. KRISLE: Today, sir? No, sir. They are not even available to me at this point, sir.

THE COURT: You indicate in your previous testimony and in statements of your counsel that the funds are invested in securities at interest?

MR. KRISLE: CD's sir.

THE COURT: CD's. Are they located in a bank in South Dakota?

MR. KRISLE: I want to stand on my Constitutional rights in that question.

Attorney King then insisted that Bankruptcy Rule 5004 and the American Bar Association's Code of Judicial Ethics require that the Bankruptcy Judge disqualify himself. In response, Attorney Stuck pointed out that case law overwhelmingly holds that a judge is not required to disqualify himself because he is sued in another action.

Upon Court inquiry, Attorney Stuck conceded that no evidence was offered to show that Mrs. Krisle, other than being a named joint debtor, had participated in this matter.

Attorney King concluded his case by requesting that he also go to jail if his client is found in civil contempt and incarcerated.[4] He told the Court that Mr. Krisle was refusing to turn over the proceeds and disobeying the Court's orders on his advice.

---

4.  *See* note 11.

Other than granting Attorney DeGeest's Motion to Withdraw, the Court took all matters under advisement.

### III. *Motion to Withdraw*

The withdrawal matter is before the Court from a Motion to Withdraw filed by Attorney Raymond R. DeGeest on August 14, 1985. Hearing no objections, and the debtor, Mr. Krisle, pro se, on the record acceding to and concurring in the motion, the Court granted the Motion to Withdraw at the October 2, 1985, hearing.

### IV. *Motion for Automatic Stay and Petition for Change of Venue*

The automatic stay and change of venue are before the Court from appropriate filings by the debtors, pro se, on September 30, 1985. Because neither was set for hearing nor had a request been made, both are denied. Bankr. R.P. 1014 and Bankr. R.P. 9014.

### V. *Civil Contempt of Debtor*

The civil contempt matter is before the Court on motion to show cause and hold debtor in civil contempt filed by Attorney Stuck on behalf of First Bank on August 27, 1985, and by order of the United States District Court for the District of South Dakota, Central Division, Civ. No. 85–3038, to specifically readjudicate the issue of whether one of the debtors, Kenneth R. Krisle, is in civil contempt of the Bankruptcy Court for violating the provision of a bankruptcy statute or rule or order of the Bankruptcy Court entered September 3, 1985. The Court consolidated these because they substantively raise the same issue. No objections were heard.

For purposes of appropriate review and complete analysis, the June 4, 1985, hearing is discussed. The relevant facts are these.

### A. *June 4, 1985, Hearing*

At the June 4, 1985, hearing, Mr. Krisle refused to turn over the cash collateral which he had withdrawn from the debtor-in-possession account located at West River State Bank in Hettinger, North Dakota, as ordered by this Court.

The substance of the pleadings submitted by First Bank showed an emergency situation in that approximately $100,000 ($94,207.81) in cash collateral secured to First Bank had been withdrawn from the debtor-in-possession account and the account was thereafter closed. 11 U.S.C. § 362(f) permits the Bankruptcy Court to deal with such an emergency with or without a hearing. Under Section 362(f), the Court, with or without a hearing, may grant such relief from stay as is necessary to prevent irreparable damage to an interested party. No objections to the substance of the hearing or the timeliness of the pleadings were made by either the debtors or their attorney. The Court, therefore, could hear the matter.

Mr. Krisle, as the debtor-in-possession, was required to segregate and account for cash collateral in his control. *See* 11 U.S.C. § 363(c)(4) and Bankr. R.P. 9001(10). He was also restricted from using this cash collateral without the consent of an entity in interest or court authorization. 11 U.S.C. § 363(c)(2). Mr. Krisle neither received court authorization nor First Bank's consent prior to his withdrawing the cash proceeds. The debtors had previously obtained orders for the use of cash collateral and, thus, were aware of their duties and proper procedures.

These funds were not the property of Mr. Krisle, but of the estate. 11 U.S.C. § 541. Mr. Krisle had a fiduciary duty as a debtor-in-possession to turn over property of the estate. *See* 11 U.S.C. § 1107(a) and Bankr. R.P. 9001(10). Mr. Krisle refused to do so.

Mr. Krisle was liable for civil contempt when he disobeyed this Court's order to turn over the cash collateral and violated 11 U.S.C. § 363. *See, e.g., Krisle*, Civ. No. 85–3038 (D.S.D. Sept. 3, 1985); *In re Crabtree*, 39 B.R. 702, 710 (Bkrtcy.E.D.Tenn. 1984); *United States v. Abodeely*, 564 F.Supp. 327, 329 (N.D.Iowa 1983); *Thompson v. Johnson*, 410 F.Supp. 633, 640 (Pa. 1976), *aff'd*, 556 F.2d 568 (3d Cir.1977). It is not necessary that his violation be willful

or that there be intent to violate the order. *Abodeely*, 564 F.Supp. at 329.

■ The Court had the right to find Mr. Krisle in civil contempt. When a contemptuous act is done in the presence of the Court, the Court may act without a motion by the injured party. *See, e.g., Latrobe Steel Co. v. United Steel Workers, Etc.*, 545 F.2d 1336, 1343–44 (3d Cir.1976). Mr. Krisle violated the Court's order in its presence when he disobeyed the order to turn over the cash proceeds and violated 11 U.S.C. § 363.

■ The Court had the power to impose imprisonment sanctions on Mr. Krisle. *Krisle*, Civ. No. 85–3038 (D.S.D. Sept. 3, 1985). *See also, In re Crabtree*,[5] 39 B.R. 702, 708 (Bkrtcy.E.D.Tenn.1984). *Cf. In re Omega Equipment Corp.*, 51 B.R. 569 (D.C.D.Colo.1985). An indefinite period of confinement which is subject to termination only by compliance with the Court's order is proper. *United States v. Hughey*, 571 F.2d 111, 114 (2d Cir.1978). This is because the purpose of civil contempt is to coerce compliance with a court order and, as such, is remedial in nature. *Abodeely*, 564 F.Supp. at 329; *United States v. Professional Air Traffic Controllers*, 678 F.2d 1, 4 (1st Cir.1982); *In re Grand Jury Proceedings*, 574 F.2d 445, 447 (8th Cir.1978).

■ While the Court relied, in part, on an affidavit submitted on behalf of First Bank for ultimately finding that Mr. Krisle was in contempt of the Court, Mr. Krisle was provided an opportunity to be heard. Unless unavoidable, civil contempt matters shall not be heard solely on affidavits. *NLRB v. Rath Packing Co.*, 123 F.2d 684 (8th Cir.1941). Affidavits may, however, be relied upon when there is an opportunity to be heard. *Hoffman, Etc. v. Beer Drivers and Salesmen, Etc.*, 536 F.2d 1268, 1277, n. 4 and discussion (9th Cir.1976).

Although mindful of Mr. Krisle's refusal to answer any questions based on his Fifth Amendment rights and his request for immunity, an order to turn over the property of the estate does not violate a debtor's Fifth Amendment rights and, therefore, immunity is not in issue.[6]

■ Mr. Krisle also improperly relied on his Fifth Amendment rights when this Court ordered his answering the question, "Do you currently have a debtor-in-possession account regarding this bankruptcy?" This is because Mr. Krisle failed to produce any facts on which he based his claim of privilege. He may not decline to disclose information on the basis of a naked assertion that the information requested may tend to incriminate him. *In re Arend*, 286 F. 516 (2d Cir.1922); *Podolin v. Lesher Warner Dry Goods Company*, 210 F. 97

---

**5.** The *Crabtree* decision, in part, relies on 28 U.S.C. § 1481. This section stated the following:

"Powers of the bankruptcy court—A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment."

While the 1984 Bankruptcy Act Amendments have stricken this provision, the power is within the scope of 11 U.S.C. § 105 when read together with 28 U.S.C. § 157(b).

Section 105 reads in pertinent part:

"Power of the Court—
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Sections 157(b)(1) and (2) read in pertinent part:

(b)(1) "Bankruptcy judges may hear and determine all ... core proceedings ..., and may enter appropriate orders and judgments, subject to review under section 158 of this title."

(2) Core proceedings include, but are not limited to—

....

(E) orders to turn over property of the estate.

*See also* 18 U.S.C. § 401—

Section 401 reads in pertinent part:

"A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

....

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

**6.** Because the debtor raised this issue again at the October 2, 1985, hearing, this issue will be discussed in detail under that section.

(3d Cir.1914); *In re John Lakis, Inc.*, 228 F.Supp. 918 (S.D.N.Y.1964); *In re Crabtree*, 39 B.R. 702 (Bkrtcy.E.D.Tenn.1984). Mr. Krisle's "say-so" does not of itself establish the hazard of incrimination. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■ It is the Court's responsibility to determine whether a debtor's refusal to provide information is justified and to compel production of the requested information if it clearly appears that the debtor is mistaken in the assertion of his constitutional privilege. *Id.; In re Crabtree, supra* at 712. In respect to the claim of a Fifth Amendment privilege against self-incrimination, there must be evidence that there is a substantial and real hazard of incrimination. *Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); *In re Inv. Bankers, Inc.*, 30 B.R. 883 (Bkrtcy.D.Colo.1983). In the leading treatise in the bankruptcy field, it is stated:

> It is clear that it is the responsibility of the court to determine whether the debtor ... has reasonable ground to fear that his answer may incriminate him. This determination is to be made on the basis of the circumstances of the case and the nature of the evidence which the witness is called upon to give. When the basis for such apprehension is not apparent there may very well be an obligation on the part of the debtor to produce the facts on which he bases a claim of privilege. If the court is convinced the question cannot possibly incriminate the witness he can become compelled to testify.

2 *Collier on Bankruptcy* ¶ 344.03 (15th ed. 1983), quoted in *In re Crabtree*, 39 B.R. 702, 712 (Bkrtcy.E.D.Tenn.1984).

■ Mr. Krisle was not asked any questions which could have incriminated him. He pleaded the Fifth Amendment to questions concerning his name, his representation, and whether there is a debtor-in-possession account. The debtor made no offer to produce facts on which he claimed his privilege. Thus, his Fifth Amendment rights were not violated.

### B. *October 2, 1985, Hearing*

At the October 2, 1985, hearing, Mr. Krisle again refused to turn over the $94,-207.81 in cash collateral which he had withdrawn from the debtor-in-possession account located at West River State Bank in Hettinger, North Dakota, as ordered by the Court on both June 4, 1985, and August 27, 1985. While refusing to testify as to the whereabouts of the cash collateral, Mr. Krisle admitted that he has this money and invested it.

Essentially, the debtor and his counsel employ four arguments as to why the Court's orders to turn over the cash collateral were rightfully disobeyed. They are that the debtor's immunity rights under 11 U.S.C. § 344 protect him, the debtor needs the cash collateral to operate his business and First Bank is adequately protected, First Bank's turnover motion violates the Bankruptcy Code's automatic stay provision, and, because the debtors are farmers, they have an absolute right to dismiss their Chapter 11 reorganization and, therefore, the cash proceeds are no longer a bankruptcy matter.

The issues raised are: 1) When a judge requires a debtor to turn over property of the estate to the court, does this violate a debtor's Fifth Amendment rights; 2) When a bankruptcy court orders a debtor to turn over cash collateral which is wrongfully withdrawn from the debtor-in-possession account, may the debtor properly disobey the order on the grounds that the debtor needs the proceeds to operate his business and a major secured creditor's interest is adequately protected; 3) When it reasonably appears that a debtor has wrongfully withdrawn cash collateral from the debtor-in-possession account, does a major secured creditor's motion for issuance of an order to show cause, for turnover of property, for a restraining order, and for an order holding debtors in contempt violate the automatic stay provision of the Bankruptcy Code; 4) When there is apparent miscon-

duct by a debtor who is a farmer involved in a voluntary Chapter 11 reorganization, does the debtor have an absolute right to have his bankruptcy case dismissed.

■ The first issue is when a judge requires a debtor to turn over property of the estate to the court, does this violate a debtor's Fifth Amendment rights? The Court holds that an order to turn over property of the estate does not violate a debtor's Fifth Amendment rights and, therefore, immunity is not in issue. This is based on the following discussion.

Justice Holmes was faced with a similar situation in the case of *In re Harris*, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911), where, in overruling a debtor's challenge to a district court order compelling the debtor to deliver his books of account to his receiver, Justice Holmes stated:

> If the order to the bankrupt, standing alone, infringed his constitutional rights, it might be true that the provisions intended to save them would be inadequate and that nothing short of statutory immunity would suffice. *But no constitutional rights are touched. The question is not of testimony, but of surrender*, not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of *compelling him to yield possession of property that he no longer is entitled to keep.* (emphasis added)

221 U.S. at 279, 31 S.Ct. at 558.

This result was reaffirmed by the Supreme Court in the case of *In re Fuller*, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923). *Fuller* involved a refusal to turn over to the bankruptcy court certain books and records retained by the debtor. In denying a stay to the turnover orders, the court stated:

> A man who becomes a bankrupt or who is brought into a bankruptcy court has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property will carry with it incriminating evidence against him. His property and its possession pass from him by operation and due proceedings of law, and when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose.

26 U.S. at 93, 43 S.Ct. at 497.

In this case, Krisle was not requested to turn over books, records, or other recorded information to this Court, but only to turn over secured cash proceeds. *See* 11 U.S.C. §§ 363(c) and 541 and Bankr. R.P. 9001(10).

When faced with a similar request in the matter of *In re Crabtree*, 39 B.R. 726 (Bkrtcy.E.D.Tenn.1984), the bankruptcy judge held that the debtor may not decline to surrender assets of the estate on the basis of the privilege against self-incrimination. The debtor's obligation to surrender his assets is outside the protective scope of the Fifth Amendment. *Id.* at 731. The *Crabtree* court further stated:

> Whether the debtor has turned over all property of the estate, with the exception of privileged recorded information, is within his exclusive knowledge. Although he may not be compelled to disclose privileged information pertaining to property of the estate, he is not otherwise excused from surrendering to the trustee any and all property of the estate. Assets may not be retained on the theory that their surrender will incriminate the debtor.

*Crabtree* at 732.

Finally, in the recent case of *In re Devereaux*, 48 B.R. 644 (Bkrtcy.S.D.Cal.1985), the trustee for a Chapter 7 debtor filed a motion to order the debtor to surrender all property of the estate and certify under penalty of perjury that she had done so. The debtor had refused to do so, asserting that, because she was at that time the subject of a grand jury investigation to determine whether she had committed certain criminal acts, the order to turn over property violated her Fifth Amendment rights. The court, citing *Crabtree*, held that the debtor's obligation to surrender

her assets was outside the protective scope of the Fifth Amendment and, therefore, the debtor could not decline to surrender assets of the estate on the basis of the privilege against self-incrimination.

Thus, the Fifth Amendment clearly does not protect a debtor's refusal to turn over the cash collateral withdrawn from the debtor-in-possession account. This is in accord with the Findings of the United States District Court for the District of South Dakota, *Krisle,* Civ. No. 85–3038 (Aug. 23, 1985).

■ The second issue is when a bankruptcy court orders a debtor to turn over cash collateral which is wrongfully withdrawn from the debtor-in-possession account, may a debtor properly disobey the court order on the grounds that the debtor needs the cash proceeds to operate his business and that a major secured creditor is adequately protected? The Court holds in the negative.

Mr. Krisle wrongfully withdrew the cash collateral from the debtor-in-possession account and violated the Bankruptcy Code. As the debtor-in-possession, he is required to segregate and account for cash collateral in his control. *See* 11 U.S.C. § 363(c)(4) and Bankr. R.P. 9001(10). He is also restricted from using this cash collateral without the consent of an entity in interest or court authorization. 11 U.S.C. § 363(c)(2). Mr. Krisle neither received previous court authorization nor First Bank's consent prior to his withdrawing the cash proceeds. The debtors had previously obtained orders for the use of cash collateral and, thus, were aware of their duties and proper procedures.

These funds were not the property of Mr. Krisle, but of the estate. 11 U.S.C. § 541. Mr. Krisle had a fiduciary duty as a debtor-in-possession to turn over property of the estate. *See* 11 U.S.C. § 1107(a) and Bankr. R.P. 9001(10).

Attorney King contends, alternatively, that, because the debtor needed the cash collateral to operate his business and the bank's approximately $344,935.00 interest is otherwise adequately protected, his client may disobey the Court's order to turn over the proceeds. The Code procedures relative to the use of cash collateral are clear. Without First Bank's consent, Mr. Krisle may only use the cash collateral after court authorization, which requires proper notice and hearing. *See* 11 U.S.C. § 363(c)(2);[7] Bankr. R.P. 4001(a) and 9014. Proper notice was not provided nor a hearing set. Essentially, Attorney King's argument is that this debtor may ignore all other Bankruptcy Code requirements and procedures and may, summarily, use cash proceeds in which a creditor has a valid security interest. Both the Court and creditors have a substantial interest in what a debtor does with cash collateral. Proper procedures must be followed to effect an orderly reorganization.

Attorney King also insists that, because the bank's interest is adequately protected, the debtor may ignore the Court's order to turn over the proceeds. Whether the bank's interest is adequately protected is irrelevant for determining if Mr. Krisle may disobey the Court's order. Again, this debtor may not, summarily, use the cash collateral.

■ The third issue is when it reasonably appears that a debtor wrongfully withdrew cash collateral from the debtor-in-possession account, does a major secured creditor's motion for issuance of an order to show cause, for turnover of property, and for an order holding debtors in contempt violate the automatic stay provision of the Bankruptcy Code? The Court holds in the negative.

Attorney King contends that First Bank's motion for issuance of an order to show cause, for turnover of property, and for an order to show cause violates the

---

7. Although "notice and hearing" may be informal (i.e., by telephone conference), this does not mean that a debtor may decide on his own to use cash collateral. *See* 2 *Collier on Bankruptcy* ¶ 363.04 (15th ed.). What is confusing is that the debtor testified on one hand that he is using the proceeds for farming expenses and on the other that he invested the proceeds in CD's.

automatic stay provision of the Bankruptcy Code; specifically, that this motion constitutes an "act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate." 11 U.S.C. § 362(a)(3). This completely ignores other applicable 11 U.S.C. § 362 subsections. Section 362(d) provides a creditor a right to pursue relief from stay for cause. Under Subsection (f), a court may grant relief without a hearing to prevent irreparable damage.

When First Bank became aware that Mr. Krisle had withdrawn over $94,000.00 in cash collateral secured to it from the sale of livestock, it immediately filed its motion. Wrongful withdrawal of funds from the debtor-in-possession account is cause for grant of relief from stay. *See* 11 U.S.C. § 362(d)(1).[8]

Essentially, Attorney King's argument is that when a creditor reasonably believes that a debtor has wrongfully withdrawn cash collateral from the debtor-in-possession account, the Bankruptcy Code's automatic stay provision precludes any creditor action. Stating the argument shows its inherent weakness. Although providing a debtor relief from creditor pressure to effectively reorganize, the automatic stay provision is not an all-encompassing shield which protects a debtor from complaints of improper acts. *See* 11 U.S.C. §§ 362(d) and (f) and H.R. Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977), U.S. Code Cong. & Admin. News 1978/pp. 5787, 6296–6299. Debtors, as well as creditors, are required to abide by the Bankruptcy Code and its Rules.

The final issue is when there is apparent misconduct by a debtor who is a farmer involved in a voluntary Chapter 11 reorganization, does the debtor have an absolute right to have his bankruptcy case dismissed? The Court holds in the negative.

Attorney King insists that the Bankruptcy Code provides the debtor who is a farmer the absolute right to have his bankruptcy case dismissed and, therefore, the cash proceeds are no longer a bankruptcy matter.[9] He, therefore, concludes that wrongful nondismissal effects an involuntary bankruptcy of a farmer, violating 11 U.S.C. § 303.[10]

Even with a strained reading of the Bankruptcy Code, no Code provisions provide any Chapter 11 debtor the absolute right to have his bankruptcy case dismissed. This is within the Court's discretion. 11 U.S.C. § 1112(b); 5 *Collier on Bankruptcy* ¶ 1112.03[d] (15th ed. 1979). Mindful of the dismissal denial at the June hearing, the Court properly denied Mr. Krisle's request for dismissal at the October 2, 1985, hearing. When the dismissal matter came for hearing, Mr. Krisle had already wrongfully withdrawn the cash collateral from the debtor-in-possession account. To find an absolute right of dismissal would only wrongfully reward this debtor, encourage similar misconduct by other debtors, injure the creditor(s), and undermine bankruptcy reorganization under the supervision of the court.

Mr. Krisle's reliance on his advice of counsel for his refusal to turn over the wrongfully withdrawn cash proceeds and

---

8. As required by 11 U.S.C. § 363(c)(2), the debtors neither received Court authorization nor First Bank's consent prior to removal of cash collateral secured to First Bank by sale of livestock.

9. While Attorney King was unclear as to which Bankruptcy Code sections apply, 11 U.S.C. §§ 303 and 1112 were cited in the debtors' motion in opposition.
   11 U.S.C. § 303(a) reads in pertinent part:
   "An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer...."
   11 U.S.C. § 1112(c) reads in pertinent part:

"The court may not convert a [chapter 11 case] to a case under chapter 7 ... if the debtor is a farmer ... unless the debtor requests such conversion."

10. The motion in opposition, in a conclusory manner, also contends that the nondismissal effects a conversion of a farmer from a Chapter 11 to a Chapter 7. 11 U.S.C. § 1112 is cited for this proposition. Presumably, the debtors meant Section 1112(c). Regardless, the Court is unable to find any logical basis for this argument.

disobeyance of a court order is no excuse for civil contempt. *See United States v. Ray*, 683 F.2d 1116, 1117 (7th Cir.1982), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1983); *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir.1973). If one believes an order is invalid, the remedy is to appeal. Absent a stay, a person must comply with the order. *Maness v. Meyers*, 419 U.S. 449, 458–459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975).

### Conclusion

The debtor is in civil contempt of the Court for withdrawing cash collateral from the debtor-in-possession account without Court approval or entity consent, thereby violating 11 U.S.C. §§ 363(c)(2) and (4) and 541, and for refusing to obey its June 4 and August 27, 1985, lawful orders to turn over to the Court the same cash collateral in the amount of $94,207.81. Mr. Krisle's alleged grounds for disobeying the Court's orders were carefully considered and found without merit. This Court orders the debtor, Kenneth R. Krisle, to be remanded to the custody of the United States Marshal until such time as he turns over the cash proceeds wrongfully withdrawn from the debtor-in-possession account.

LaVon E. Krisle is found not in contempt of the Court. This is because no evidence was offered to show that Mrs. Krisle, other than being a named joint debtor, had participated in the wrongful withdrawal of cash collateral from the debtor-in-possession account.

### VI. Contempt of Debtor Attorney

Attorney King concluded his case by requesting that he also go to jail if his client is in contempt of the Court and incarcerated.[11] He told the Court that Mr. Krisle is refusing to turn over the proceeds and disobeying the Court's orders on his advice.

The fundamental issue raised is when an attorney advises his client to disobey an order of the court, is the attorney in contempt of the court? A discussion of the relevant law in the area follows.

*Maness v. Meyers*,[12] 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), is fundamental for determining whether Attorney King is in contempt of the Court for advising his client to disobey an order of the Court. In *Maness*, the Court narrowly held that an attorney is not subject to the penalty of contempt for advising his client, in good faith, to assert the Fifth Amendment privilege against self-incrimination in any proceeding embracing power to compel testimony. *Id.* While determining this exception, Chief Justice Burger, writing for the Court, carefully emphasized that:

11. MR. KING: Thank you, Your Honor. The last thing I would like to put on the record, Your Honor, is that Mr. Ken Krisle is refusing to turn over this property on the advice of this counsel, Your Honor, and I would just submit that Mr. Krisle should not be incarcerated following the advice of counsel and that if he is, in fact, incarcerated that this counsel must be incarcerated with him because he is only acting upon my advice.

THE COURT: Are you asking in the event the Court would determine the contempt matter adversely to Mr. Krisle that you be included in the order that the Court would enter?

MR. KING: Well, Your Honor, I feel that Mr. Krisle is acting upon my advice and if I can't stand by my own advice then I am not a very good attorney and I would recommend that the Court, of course, not incarcerate Mr. Krisle and allow this Honorable Court or another judge to hear our other motions before this is decided. But I would feel that if Mr. Krisle is incarcerated for following my advice that I am not a very good attorney unless I

stand by that advice and accompany him to jail.

12. *Maness* involved an attorney advising his client to disobey both a court instruction and a subpoena duces tecum requesting the production of certain magazines. A city attorney sought the production of the magazines for forming a basis for preventing illegal distribution of obscene matter. The attorney argued that the city was attempting, through a civil proceeding, to discover evidence which properly should be discovered, if at all, through criminal process. The attorney carefully pointed out to the trial court that it properly look at the character of the material covered by the subpoena and that there is a "substantial probability" that the magazines would be used in criminal prosecution. On his advice of counsel, the client, on Fifth Amendment grounds, refused to obey the court's instruction and subpoena. *Id.* 449–465, 95 S.Ct. at 586–95.

We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person believes that an order is incorrect the remedy is to appeal, but absent a stay he must promptly comply with an order pending appeal ... The orderly and expeditious administration of justice by the courts requires that an order issued by the court ... must be obeyed until it is reversed by orderly and proper proceedings.

*Id.* at 458–459, 95 S.Ct. at 591.[13]

The basis for this narrow exception is that, when a witness, during trial, is ordered to reveal information, "compliance could cause irreparable injury because appellate courts cannot always 'unring the bell' once the information is released." *Id.* at 460, 95 S.Ct. at 592. Unless the attorney is within the *Maness* limits, he may be held in contempt.[14] *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 58 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Although an attorney has a right in trying a case to be contentious and zealous in representing his client's interests, "disobedience is not an ingredient of contentiousness [and] defiance is not an element of zealousness." *Commonwealth of Pennsylvania v. Local Union 542, Intern. Union of Operating Engineers*, 552 F.2d 498, 506 (3d Cir.1977).

Consistent with the spirit of the *Maness*[15] holding, the Code of Professional Responsibility Disciplinary Rule 7–106(a) provides:

"A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps to test the validity of such rule or ruling."

The Code further exhorts the lawyer that:

Rules of evidence and procedure are designed to lead to just decisions and are part of the framework of the law. Thus, while a lawyer may take steps in good faith and within the framework of the law to test the validity of the rules, he is not justified in consciously violating such rules and should be diligent in his efforts

**13.** The Chief Justice continued:

This principle is especially applicable to orders issued during trial. Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders. While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply.

*Id.* at 459, 95 S.Ct. at 591 (citations omitted); *see also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir.1985).

**14.** *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985), involved attorneys advising their bank-client to disregard District Court orders to refrain from contacting the plaintiff class. The attorneys argued no sanctions should issue because their advice, however mistaken, was given in good faith. Observing that an attorney may counsel or assist a client's good faith efforts to test the validity of the law in good conscience, they also maintained that an attorney who counsels disobedience to a standing order of the court stands firmly within ethical bounds. The Court noted that, "[a]s a fundamental proposition, orders of the court must be obeyed until reversed by orderly review or disrobed of authority by delay of frustration in the appellate process." Upholding the District Court's criminal contempt finding, the Court concluded, "[D]isobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in an irrevocable and permanent surrender of constitutional right." *Id.* 1207–1210.

*Davis v. Goodson*, 276 Ark. 337, 635 S.W.2d 226 (1982), *cert. denied*, 459 U.S. 1154, 103 S.Ct. 798, 74 L.Ed.2d 1002 (1985), involved an attorney advising his client in open court not to take a court-ordered breathalyzer test because it is "self-incriminatory." The court, finding the attorney in contempt, held that "[a]lthough an attorney has a duty to represent his client zealously, he should not engage in conduct which offends the dignity of the court." *Id.* 635 S.W.2d at 227.

**15.** *See Chapman v. Pacific Tel. and Tel. Co.*, 613 F.2d 193, 197 (9th Cir.1979).

to guard against unintentional violations of them.

Ethical Code 7–25.

The question becomes whether Attorney King's behavior is within the *Maness* limits. Specifically, in view of *Maness*, whether Attorney King, in good faith, advised his client to refuse to turn over the wrongfully withdrawn cash proceeds and violate the Court's order on Fifth Amendment grounds. While *Maness* does not specifically define "good faith," Chief Justice Burger noted the following immediately after his holding:

In applying these principles it is important to note what this case does not involve ... most important, there is no contention here as to lack of good faith or reasonable grounds for assertion of a Fifth Amendment claim.

Both in a pretrial written motion and orally during trial, [the attorney] cogently stated his reasons for believing the privilege applied:

In view of the fact that there is this substantial possibility of self-incrimination; in view of the fact that seven other magazines that are of the same character as the ... magazines named in the subpoena, that they have provided the basis for past criminal prosecutions; in view of the fact that criminal prosecutions are not only a very definite possibility, they are in fact a pronounced possibility ...

*Id.* at 468, 95 S.Ct. at 596.

■ Although requesting immunity on behalf of his client, Attorney King neither offered written nor oral arguments for his client's Fifth Amendment stance. The question becomes whether his naked assertion of immunity for his client was either made in good faith or reasonable. When only a few weeks prior to this hearing, the United States District Court for the District of South Dakota, in a collateral mat-

ter, finds that no Fifth Amendment issue is raised when a bankruptcy court orders a debtor to turn over cash proceeds, this Court is unable to find good faith or reasonableness.[16] The only conclusion is that Attorney King chose to either ignore the United States District Court's findings or did not properly review all important matters prior to the hearing. Even if the District Court had not made this finding, the debtor's Fifth Amendment stance is unreasonable. The debtor admitted that he took over $94,000.00 from the debtor-in-possession account and has invested it. This debtor "rang the bell" when he wrongfully withdrew the cash proceeds, and, as such, he has little concern on appeal. Thus, the Court concludes Attorney King's actions were neither in good faith nor reasonable and, therefore, not protected by *Maness* and its progeny.

Attorney King's advising his client to neither turn over the cash proceeds nor obey the Court's orders is contemptuous behavior. *Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (1976), *citing as authority Maness v. Meyers,* 419 U.S. 449, 459–60, 95 S.Ct. 584, 591–92, 42 L.Ed.2d 574. His proper remedy is appeal. *Maness,* 419 U.S. at 458, 95 S.Ct. at 591. While the United States District Court for the District of South Dakota may consider whether Attorney King is in criminal contempt of the Court,[17] this Court finds that Attorney King is in civil contempt of the Court.

*Conclusion*

The Court orders Attorney King to be remanded to the custody of the United States Marshal until such time as he advises his client that he has no right other than appropriate appeal to refuse to turn over the cash proceeds wrongfully withdrawn from the debtor-in-possession account as ordered by the Court on June 4, 1985, and August 27, 1985.

16. *Krisle,* Civ. No. 85–3038 (D.S.D. Aug. 23, 1985).

17. *See Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985); *Davis v. Good-*

*son,* 635 S.W.2d 226 (Ark.1982), *cert. denied,* 459 U.S. 1154, 103 S.Ct. 798, 74 L.Ed.2d 1002 (1985); and note 14.

## VII. *Attorney's Fees*

This matter is before the Court from a Motion for Allowance of Administrative Expense Claim and Lien filed by Attorney Gors on August 8, 1985. This matter is continued until further order by the Court.

## VIII. *Disqualification of Judge*

This matter is before the Court from a Motion to Disqualify Judge, with supporting Affidavits, filed by Debtors Kenneth R. Krisle and LaVon E. Krisle, pro se, on August 28, 1985. The issue is whether the Bankruptcy Judge should disqualify himself from further bankruptcy proceedings concerning the debtors. A review of applicable law in this area follows.

The standard for disqualification is contained in the recusal statute, 28 U.S.C. § 455(a), which provides:

"Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned."

This section, as amended in 1974, replaces the former "duty to sit" standard and requires the use of reasonableness in a judge's disqualification decision. *See United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982); *In re Olson*, 20 B.R. 206 (Bkrtcy.D.Neb.1982).

Because the goal of the statute is to ensure not only actual impartiality but also the appearance of impartiality, disqualification may be required even when there is no actual bias or prejudice. *Id.* A judge must assume the recusal applications as true when considering disqualification. *See Berger v. United States*, 255 U.S. 22, 35–36, 41 S.Ct. 230, 233–34, 65 L.Ed. 481 (1921); *United States v. Dodge*, 538 F.2d 770, 781 (8th Cir.1976), *cert. denied sub nom.; Cooper v. United States*, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977); *United States v. Trevithick*, 526 F.2d 838, 839 (8th Cir.1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976); *In re Olson*, 20 B.R. 206, 208 (Bkrtcy.D. Neb.1982).

In a leading case cited by the Eighth Circuit in *Poludniak*, the Fifth Circuit described the standard for disqualification in this manner:

[A] judge ... ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

*Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.1980), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

"[T]he statute requires a judge to exercise his discretion in favor of disqualification if he has any questions about the propriety of his sitting in the particular case." *Id.* at 1112. The use of "might" in the statute "clearly mandates that it would be preferable for a judge to error on the side of caution and disqualify himself in a questionable case." *Id.*

Section 455 is self-enforcing. *See Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605 (8th Cir.1977) (dictum), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), overruled on other grounds; *Firestone Tire & Rubber Co. v. Risjord*, 612 F.2d 377, 378 (8th Cir.1975), vacated on other grounds, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571; *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944 (1976); *Idaho v. Freeman*, 507 F.Supp. 706, 720 (Bkrtcy.D.Idaho 1981); 1 *Collier on Bankruptcy* ¶ 2.01(10)(a) (15th ed. 1979).

Despite this liberal standard, this Court does not take recusal lightly. The right to an impartial judge cannot be advanced so broadly as to permit "judge-shopping." *See In re Martin-Trigona*, 573 F.Supp. 1237, 1243 (D.Conn.1983). And judges have a duty not to avoid cases because they are difficult or controversial. *United States v. Singer*, 575 F.Supp. 63, 68 (D.Minn.1983); *see also*, Report of Senate Judiciary Committee Recommending Sec-

tion 455, quoted in *Wright, Miller & Cooper* § 3549 (1975). Recusal is not required because a party dissatisfied with a court's ruling claims bias. *Id.; see also, United States v. Veteto,* 701 F.2d 136 (D.Ga.1983), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3548, 77 L.Ed.2d 1396; *In re Martin-Trigona,* 573 F.Supp. 1237, 1245 (D.Conn.1983). Nor because a litigant sues or threatens to sue. *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *In re Martin-Trigona,* 573 F.Supp. 1237, 1242–43 (D.Conn.1983).

The litigant mischief in *In re Martin-Trigona* deserves mention. Mr. Martin-Trigona (Trigona) filed lawsuits against the district judge who wrote the opinion, his wife, and the law firm which handled their personal matters. *Id.* at 1242. During his oral argument before the Massachusetts Bankruptcy Court, Trigona told the court, "You will go to bed at night saying I wish that Martin-Trigona case would go away." The district court observed that:

> It may be that Mr. Martin-Trigona, recognizing his legal and factual problem, is attempting by his wild accusations of venal conduct on the part of all the lawyers, trustees, and bankruptcy judges involved in the administration of the estates in both Massachusetts and Connecticut, in the words of former Justice Jackson, to pound loudly on the table in the hope that if he becomes enough of a problem, that by either intimidation or weariness, he may accomplish some part of his purpose. Since he is already in bankruptcy, what does he have to lose? The result is that the accusations increase, the motions, pleadings, complaints, and suits multiply, courts and lawyers are buried in mountains of time-consuming paper. If there is one truth, it is that the estate will be bled white by the costs and legal fees engendered by this "crusade."

While cognizant of the Fifth Circuit's holding in *Potashnick,* the court did not disqualify itself. *Id.* at 1245. I respect this court for its enduring patience and decision not to disqualify itself.

■ However, after careful review of the law and many agonizing hours of thought, I regretfully recuse myself from any further proceedings concerning this matter. *See* Bankr.R.P. 5004. This conclusion was not easy. But when I asked myself how this would look to the average person in the streets—would he, knowing all of the circumstances of this case, harbor doubts about my impartiality—I can only conclude he would. One of the debtors is presently suing me for $3,250,000. This is because he alleges, among other things, that I violated his constitutional rights when he was imprisoned for violating both a court order to turn over missing cash proceeds and had illegal ex parte discussions with First Bank's representatives and their attorney. Regardless of how ridiculous and unfounded I think that these allegations are, the law requires that I presume them to be true when making my recusal decision. Thus, the law is not concerned with the fact that I personally know that I could continue to be objective in this matter.

It is necessary, however, to discuss some of the factors which deeply disturb me. The Motion to Disqualify Judge was not filed by the debtors until August 28, 1985. This is almost fifteen months after their petition filing, almost three months after the hearing to turn over the cash proceeds, five days after the filing of the contempt motion by First Bank and issuing of an order to show cause by this Court, and *nine days after the issuing of the findings of the United States District Court* in a collateral habeas corpus action.

Remember, the United States District Court, among other things, found:

1) That this is a civil contempt matter;
2) That the Bankruptcy Court does not have to confront a Fifth Amendment privilege to determine whether a violation of an order to turn over cash proceeds has occurred in a civil contempt matter; and

3) That the Bankruptcy Court may impose a fine and/or imprisonment for an indefinite period of time to compel compliance with a court order.

The aforesaid timeline has the appearance of "judge-shopping." This is because the motion was not filed until after the District Court findings were issued. Needless to say, the debtors did not find the District Court understanding of their point of view. The law is clear in that there is no basis for disqualification just because of a prior adverse ruling. Judge-shopping is a very serious matter and should never be tolerated.

The debtors have hired seven different attorneys in three states. They include Raymond R. DeGeest, John M. Fousek, Max A. Gors, James E. Carlon, and Shelley B. Heller (South Dakota), Carter King (Nevada), and, in a related matter, North Dakota attorney Judith A. Atkinson,[18] who was hired to handle the civil damage suit.

Finally, I am bothered by the fact that more than four months have passed and over $94,000 in cash proceeds are still unlawfully unaccounted for. This is the kind of situation which gives debtor reorganization a bad name.

IX. *Stay of Bankruptcy Proceedings*

This matter is before the Court from a Motion to Stay Bankruptcy Proceedings filed by Debtors Kenneth R. Krisle and LaVon E. Krisle, pro se, on August 28, 1985. The issue is whether further bankruptcy proceedings should be stayed against the debtors.

While all of this Court's orders will continue in effect, further bankruptcy proceedings are stayed pending the appointment of a successor bankruptcy judge.

The above and foregoing Findings and Decision constitute the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. An appropriate order will enter in accordance with Bankr.R.P. 9021.

---

**18.** Attorney Atkinson was never approved by the Bankruptcy Court to represent the debtors as may be required by 11 U.S.C. §§ 327, 328, 329, and 330. This matter should be considered when another bankruptcy judge is appointed to handle all further matters in this case.